Enrique G. Serna ISB No. 12114
Serna & Associates PLLC
950 W. Bannock St., Suite 1100
Boise, Idaho 83702
Tel: (210) 865-5800
Email: enrique@serna-associates.com
Lead Counsel

# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| PEDRO MANUEL ALCANTAR, Deceased, and survived by his wife, DULCE MARIA GONZALEZ, MARTA MEJIA VELASQUEZ, RICARDO ALCANTAR SANDOVAL; LUIS ENRIQUE SERENO, Deceased, and survived by his wife, SANDRA RUBIO MARTINEZ, individually and on behalf of her minor son LS, and daughter, MS; JOSE GUADALUPE SANCHEZ, Deceased, and survived by MARIA MEDINA, LUCIANO SANCHEZ, LUCIANO SANCHEZ MEDINA; JAVIER GOMER ALCANTAR, Deceased, and survived by his wife, CAROLINA REBOLLO, and on behalf of her minor son, EG, and daughter, SG; BRANDON PONCE, Deceased, and survived by FANNY ANDREA PONCE, CHRISTIAN PONCE, ARTURO PONCE; ABEL MEJIA, Deceased, and survived by his wife, JASMINE MOLINA, individually and on behalf of her minor duaghter, HM, daughter, KM; RICARDO ALCANTAR MEJIA; JOSE ALCANTAR MEJIA; and JORGE ORTEGA, Plaintiffs, | CASE NO._____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| LUIS GARCIA DIAZ, Individually, ADRIAN SIRBU, Individually; TOWER COMMUNICATIONS SOLUTIONS, LLC; J&A DRILLING AND CONSTRUCTION, LLC and SIGNET CONSTRUCTION, LLC, Defendants. | |

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

For their Complaint against Defendants, Plaintiffs allege as follows:

## INTRODUCTION

1. On Saturday May 18, 2024, at 5:30 AM, Luis Garcia Diaz ("Diaz") was driving a 2022 Dodge Ram ("Ram") white pickup truck on US Highway 20 at milepost 307.8. Diaz is an unlicensed driver who was intoxicated. Mr. Garcia Diaz is an undocumented or illegal alien working in the United States. The Ram is owned and exclusively operated by Adrian Sirbu, principal of Tower Communication Solutions, LLC ("Tower"). Sirbu and Tower partnered with J&A Drilling and Construction, LLC ("J&A") and all allowed and permited Garcia-Diaz to drive and operate the Ram. Diaz was working for J&A in partnership with Tower and Sirbu and under the exclusive control and direction of Tower, Sirbu and J&A installing and burying fiber optic in Idaho.

2. Diaz was traveling eastbound, drove left of the center line and entered the westbound travel lane and collided with a van driven by Javier Gomez Alcantar and owned by Signet Construction, LLC ("Signet"). See Idaho State Police and Idaho Falls Police reports attached as Exhibit A. The collision killed Javier Gomez Alcantar, Pedro Manuel Alcantar, Brandon Ponce, Jose Guadalupe Sanchez, Abel Mejia and Luis Enrique Sereno. The collision injured Plaintiffs Ricardo Alcantar Mejia, Jose Alcantar Mejia and Jose Ortega and other van occupants.

3. Signet provided the van for Plaintiffs. On the day of the collision, Plaintiffs were traveling from their dormitories owned and operated by Signet to a nearby ranch were Plaintiffs were building cattle feeders on behalf of Signet. Plaintiffs were lawfully employed by Signet and were in the United States in the State of Idaho under an H1B visa for nine months. Plaintiffs were under the direction and control at all times of Signet.

4.      Adrian Sirbu, J&A Drilling and Tower Communications Solutions, LLC, in concert and partnership and with full knowledge, knew that Diaz was an unlicensed driver, was undocumented, and was a heavy alcohol drinker.  Adrian Sirbu, J&A Drilling and Tower Communications Solutions, LLC, knew of such propensities and still allowed Diaz to use and operate the Ram while performing drilling and burying services in Idaho. Tower Communications Solutions, LLC, on information and belief, was providing fiber optic solutions and was working on a project in the city of Rexburg and Idaho Falls. J&A Drilling was performing fiber optic installation and burying services in partnership with Tower Communications Solutions, LLC and Adrian Sirbu, additionally Sirbu owned and operated a small fleet of Dodge Ram trucks all registered in Illinois for furtherance of their fiber optic installation projects in Idaho.

5.      Signet Construction, LLC instructed Plaintiff Pedro Manuel Alcantar to drive the Chevrolet Express G 3500 van.  Pedro Manuel Alcantar did not have a valid Idaho driver's license. Pedro Manuel Alcantar was not properly trained to drive and carry 15 passengers.  Pedro Manuel Alcantar was not properly supervised to ensure he had adequate sleep, was never instructed as to how to properly drive and operate the 15-passenger van and was not monitored to ensure he was in good physical and mental condition on the day of the collision, however he was ordered to drive the 14 men abord the van.  Signet ordered Pedro Manuel Alcantar and the rest of the van occupants to board the van and get to work.  Pedro Manuel Alcantar had been driving the van for approximately 10 days before the collision and he and Ricardo Alcantar complained through Signet's management of the following conditions affecting the safe operations of the van:

a.      The tires had low thread and were in poor operating condition.The brakes were not in good operating condition.

    b.    The van's suspension was rattling, and the van was hard to drive and not in good operating condition and the suspension was pulling to the left (driver's side) during operation.

    c.    The van's side door was not closing properly and unlatching during operation. Plaintiff, Ricardo Alcantar Mejia, had to manually lock and hold the door to prevent it from opening during operation. A special latch had to be bolted and welded into the access door (after-market) and a pin had to be placed during regular operation of the van to prevent the side doors from becoming open.

    d.    The seat belts and safety mechanisms were not in good operating conditions, the seat belts were mangled, twisted, torn, the latch plates rusted and the buckle's would not latch properly. Some of the seat belts were torn, mangled and twisted and not working and could not be worn by the occupants.

    e.    The van was an old transport van that was in a previous collision and had been repaired, the chassis and frame was bent from the prior collision and handling was affected and pulling to the left (driver's side). The van was not in good operating condition.

    f.    The Chevrolet 2016 Express G3500 was the subject of three major NHTSA recall safety campaigns, and even though performed, this particular model was the subject of over 25 published NHTSA public complains.

## PARTIES

6.    Pedro Manuel Alcantar is a citizen of the Republic of Mexico and died in the collision. He was employed by Signet. He is survived by his wife, Dulce Maria Gonzalez, his mother, Marta Mejia Velasquez, and his father, Ricardo Alcantar Sandoval. All are citizens and residents of Michoacan, Mexico.

COMPLAINT AND DEMAND FOR JURY TRIAL - 4

7. Luis Enrique Sereno is a citizen of the Republic of Mexico and died in the collision. Luis Enrique Sereno was employed by Signet. He is survived by his wife, Sandra Rubio Martinez, his minor son, LS and his minor daughter, MS. All are citizens and residents of Michoacan, Mexico.

8. Jose Guadalupe Sanchez is a citizen of the Republic of Mexico and died in the collision. He was employed by Signet. He is survived by his mother, Maria Medina, father, Luciano Sanchez, and his brother, Luciano Sanchez Medina. All are citizens and residents of Michoacan, Mexico.

9. Javier Gomez Alcantar is a citizen of the Republic of Mexico and died in the collision. He was employed by Signet. He is survived by his wife, Carolina Rebollo, minor son, EG and his daughter, SG. All are citizens and residents of Michoacan, Mexico.

10. Brandon Ponce is a citizen of the Republic of Mexico and died in the collision. He was employed by Signet. He is survived by his mother, Fanny Andrea Ponce, brother, Christian Ponce and brother, Arturo Ponce. All are citizens and residents of Michoacan, Mexico.

11. Abel Mejia was a citizen of the Republic of Mexico and died in the collision. He was employed by Signet. He is survived by his wife, Jasmine Molina, minor daughter, HM and daughter, KM. All are citizens and residents of Michoacan, Mexico.

12. Ricardo Alcantar Mejia is a citizen of the Republic of Mexico and was injured in the collision. He was employed by Signet and was following instructions from his employer on the day of the collision.

13. Jose Alcantar Mejia is a citizen of the Republic of Mexico and was injured in the collision. He was employed by Signet and was following instructions from his employer on the day of the collision.

14.     Jorge Ortega. is a citizen of the Republic of Mexico and was injured in the collision. He was employed by Signet and was following instructions from his employer on the day of the collision.

15.     Luis Garcia Diaz lwas intoxicated and the driver of the 2022 Dodge Ram 2500 that collided with the 15 Passenger Chevrolet Express G3500 van. Luis Garcia-Diaz was injured and survived the collision.  Luis Garcia-Diaz lives in Idaho. Luis Garcia-Diaz is currently being detained in Bonneville County Jail in Idaho.

16.     Adrian Sirbu is one of the owners/members of Tower Communications Solutions, LLC. He is a resident of the state of Illinois. He owned the 2022 Dodge Ram 2500 that was driven by Luis Garcia Diaz and was working together with J&A Drilling and Construction, LLC in Idaho.

17.     Tower Communication Solutions, LLC is a limited liabilty corporation registered in the State of Illinois and operating in Idaho.

18.     J&A Drilling and Construction, LLC, is a limited liability corporation registered in the State of Texas and operating in Idaho and together with Sirbu, Tower and Diaz was performing fiber optic installation and burying services in Idaho.

19.     Signet Construction, LLC is a limited liabilty corporation registered in the State of Texas and registered to do business in the State of Idaho. Signet employed all the deceased and injured Plaintiffs in Idaho.

20.     All known Defendants as of the date of the filing of this lawsuit have been identified. Plaintiff's will amend this Complaint if additional parties who are responsible are identified.

## **JURISDICTION AND VENUE**

21. This court has jurisdiction over this action pursuant to 28 USC section 1332 (a) (2), because the amount in controversy as to Plaintiffs exceeds $75,000, exclusive of interest and costs, and because Plaintiffs are citizens of the Republic of Mexico.

22. Venue is proper in the District of Idaho pursuant to 28 USC §1391(b)(2) as this district is where a substantial part of all the events or omissions giving rise to the claim occurred.

## FACTS

23. Plaintiffs are originally from Mexico and are employed through an H1B visa by Signet. Signet provides housing for Plaintiffs and controls their work schedule. Signet pays Plaintiffs between $19.50 and $22.50 per working hour plus overtime. Plaintiffs are always under Signet's supervision and control while in the United States.

24. Signet also provides transportation to and from work for Plaintiffs. Plaintiffs arrived in Idaho on or about May 1, 2024 and are under contract and would stay to work for nine (9) consecutive months. Plaintiffs are in the construction business and build cattle barns, cattle feeders, fence perimeters and other construction activities as instructed by Signet.

25. Upon arrival to the United States, Signet designated a van for the transport of the workers to and from work. On or about May 1, 2024 Signet designated a 2016 Chevrolet Express G 3500 white van for transport for Plaintiffs use (the "Van").

26. Signet designated Pedro Manuel Alcantar to be in charge and to be the Van driver. Pedro Manuel Alcantar did not have a valid Idaho drivers license. Pedro Manuel Alcantar received no training as to how to properly operate the Van, how to properly distribute the weight of the passengers, he was not given access to maintenance records, and was simply instructed to drive himself and 14 other men to and from work. The van that was subject to the accident was in poor mechanical condition, the safety mechanisms were not properly operating and Signet ignored all

warnings, even though was made aware by Pedro and Ricardo Alcantar of the safety shortcomings of the van. In previous years, Plaintiffs had access to a newer and safer transport van.

27. The Van was used, was in a prior collision, and was subject to three manufacturing recalls and the safety belts and other safety mechanisms of the van were not available or working. Even though Signet performed the recall work on the van, the van was not in good operating condition.

28. On May 1, 2024, the Van was not properly maintained and had the following operating conditions:

    a. the seat belts were not working properly in all positions and had not been maintained and were, torn, twisted, buckles did not latch, the plates were not operational, were damaged and not able to properly restrain the occupants;

    b. the tires of the vehicle were worn and did not have proper thread;

    c. the suspension was rattling and making excessive noises and not properly responding to normal driving maneuvers and would pull to the left (driver's side) during normal operations;

    d. the main access door behind the front passenger was defective and would unlatch and open during normal transportation and operation. Plaintiffs had to utilize a manual tightener or lock as the door would open during movement. Ricardo Alcantar Mejia had to hold on to the door to prevent it from opening as the men were transported to and from work.

29. The van was not in good operating condition to transport 15 men.

30. On the day of the collision, Plaintiffs were seated in the Van according to the following seating chart:

| DRIVER SIDE | | | PASSENGER SIDE |
|---|---|---|---|
| **JAVIER G. ALCANTAR (D)** | | | EDER GARCIA (I) |
| **LUIS SERENO (D)** | **JOSE SANCHEZ M.(D)** | | RICARDO ALCANTAR (I) |
| **BRANDON PONCE (D)** | **PEDRO M. ALCANTAR (D)** | | JORGE ORTEGA (I) |
| **ABEL MEJIA (D)** | RUBEN MEJIA (I) | | JOSE ALCANTAR (I) |
| MARCO BARRERA (I) | GIOVANNI SILVA (I) | JOSE DELGADO (I) | ANIBAL PONCE (I) |

31. On information and belief, Pedro Manuel Alcantar told Signet that he did not have a valid Idaho driver's license, that the van was not in good operating condition, that the seat belts were not functioning properly and that the main access door to the the van would open during transport and would have to be manually latched and held shut by an occupant.

32. Sigent disregarded the Van's defects and required Plaitniffs to use it for transporation to and from work.

33. On May 18, 2024 at approximately 5:30 AM, Diaz, an undocumented citizen from the State of Idaho was unlicensed, intoxicated, and on his way to work. Diaz was driving and operating the Ram. The Ram was owned by Adrian Sirbu from Illinois, and Sirbu permitted for the Ram to be operated by J&A Drilling in furtherance of their partnership and burying and installation of fiber optic cable as well as Diaz, according to the Idaho State Police and Idaho Falls Police. See reports attached as Exhibit "A".

34. According to Idaho State Police, Diaz was traveling eastbound on US Highway 20 MP 307.8, drove left of the center line, entering the westbound travel lane and collided with the Van driven by Javier Gomez Alcantar head-on.

35. There was no evidence of the Ram braking prior to crossing left of center or prior to smashing into the Van. The Ram hit the Van with so much force that the the Van rolled. See collision pictures attached hereto as Exhibit "B."

36. Defendant received a citation for violating Idaho Code.

37. Defendant pleaded guilty to violating Idaho Code.

38. As a result of the horrific collision, Javier Gomez Alcantar, Pedro Manuel Alcantar, Brandon Ponce, Jose Guadalupe Sanchez, Abel Mejia and Luis Enrique Sereno died at the scene. Ricardo Alcantar Mejia, Jose Alcantar Mejia, and Jorge Ortega were seriously injured. 6 other Signet employees were injured, survived the collision and are currently working for Signet.

## FIRST CAUSE OF ACTION- NEGLIGENCE PER SE
### Luis Garcia Diaz

39. Diaz's conduct constitutes negligence per se.

40. Idaho Code is a motor vehicle safety statute.

41. Diaz violated Idaho Code for his conduct in the collision.

42. Diaz received a citation of violating Idaho Code for his conduct in the collision.

43. Idaho Codes were intended to prevent the type of harm Defendant's act or omission caused.

44. Plaintiffs are members of the class of persons the statute or regulation was designed to protect.

45. Defendant's violation of Idaho Codes caused Plaintiffs' deaths and to sustain personal injuries.

46. Defendant's negligence per se directly and proximately caused Plaintiffs to suffer special and general damages, which include, but are not limited to, out-of-pocket expenses, loss of earnings, medical expenses, loss of employment, loss of business or employment opportunities,

COMPLAINT AND DEMAND FOR JURY TRIAL - 10

cost of obtaining substitute domestic services, pain, suffering, inconvenience, mental anguish, disability or disfigurement, emotional distress, and loss of enjoyment of life.

47. Plaintiffs are entitled to interest on the amount incurred on special damages pursuant to the applicable statutes of the State of Idaho.

48. As a further direct and proximate result of Defendant's negligence per, as set forth more fully above, Plaintiffs obtained the services of an attorney to represent their interests, and retained the services of Serna & Associates PLLC to prosecute this action.

## SECOND CAUSE OF ACTION- NEGLIGENCE
### Diaz /J&A/Sirbu

49. Diaz, J&A and Sirbu owed a duty of care to Plaintiffs to provide and operate their business work vehicle ("Ram") in Idaho, in a reasonable and safe manner, to maintain a proper lookout, to supervise the driver's actions, to control its personal and employee actions and propensities, to control the vehicle, to drive at a safe speed, to not allow drunk driving by their employee's or authorized drivers, and to follow the rules of the road and traffic laws.

50. Diaz, J&A and Sirbu - breached their duty of care to Plaintiffs by:

   a. Operating the vehicle without maintaining a proper lookout;

   b. Failing to adequately control and supervise Diaz and his vehicle;

   c. Failing to stop or slow down in obedience to the existing traffic conditions;

   d. Driving while intoxicated;

   e. Failing to follow the rules of the road and controlling traffic laws in this instance; and

   f. Failing to act with reasonable care as required under the circumstances.

51. Diaz's, J&A and Sirbu's negligence caused Plaintiffs to sustain personal injuries and their wrongful deaths.

COMPLAINT AND DEMAND FOR JURY TRIAL - 11

52. Diaz's, J&A and Sirbu's negligence directly and proximately caused Plaintiffs to suffer special and general damages, which include, but are not limited to: out-of-pocket expenses, loss of earnings (past and future), medical expenses (past and future), loss of employment, loss of business or employment opportunities, cost of obtaining substitute domestic services, pain, suffering, inconvenience, mental anguish, disability or disfigurement, emotional distress, and loss of enjoyment of life.

53. Plaintiffs are entitled to interest on the amount incurred on special damages pursuant to the applicable statutes of the State of Idaho.

54. As a further direct and proximate result of Diaz's negligence, as set forth more fully above, Plaintiffs obtained the services of an attorney to represent their interests, and retained the services of Serna & Associates PLLC to prosecute this action.

## SECOND CAUSE OF ACTION- NEGLIGENCE
### Signet

55. Signet knew that Van was not properly maintained and had the following deficiencies:

   a. The seat belts were not working properly in all positions, were torn, buckles were not properly operating, plates were not latching, belts were cut and stuck, and had not been maintained and were damaged and not able to restrain the occupants;

   b. The tires of the vehicle were worn and did not have proper thread;

   c. The suspension was rattling and making excessive noises and not properly responding to normal driving maneuvers;

   d. The main access door behind the front passenger was defective and would unlatch and open during normal operation and transportation. Plaintiffs had to

utilize a manual tightener or lock as the door would open during movement. Ricardo Alcantar Mejia had to hold on to the door while the Van was moving to prevent it from opening.

56.     Signet knew or should have know the Van was not in good operating condition to transport 15 men.

57.     Signet knew about the Van's dangerous operating conditions and safety defects and with reckless disregard required the men to use that van for their transport and ordered the men to drive in that one van.

58.     On information and belief, Pedro Manuel Alcantar told Signet that he did not have a valid Idaho driver's license, that the van was not in good operating condition, that the seat belts and safety systems were not functioning properly and that the main access door to the greenhouse of the van (or the 4 rows of seats behind the driver and passenger) would open during transport and would have to be manually latched. Signet recklessly disregarded the van's conditions and instructed the men to drive the van.

### FOURTH CAUSE OF ACTION -  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### All Defendants

59.     Defendants behaved intentionally and recklessly.

60.     Defendants' behavior was extreme and outrageous.

61.     Due to Defendants' acts and omission, as set forth above, Plaintiff's Heirs suffered emotional distress.

62.     Plaintiffs suffered physical symptoms from their emotional distress, including tearfulness, nausa, vomitting, accelerated heartbeats, and other stress reactions.

### FIFTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

**All Defendants**

63. Due to Defendants' acts, omissions, and breaches of duties, as set forth, Plaintiff's heirs have suffered emotional distress.

64. Plaintiffs' heirs suffered physical symptoms from their emotional distress, including tearfulness, nausea, accelerated heartbeats, and other stress reactions.

**JOINT AND SEVERAL LIABILITY**

65. Defendants are jointly and severally liable pursuant to Idaho Code § 6-803.

**PUNITIVE DAMAGES**

66. Defendants' misconduct was willful, reckless, and they acted with a bad state of mind. At the appropriate time, Plaintiffs will seek to amend this Complaint to add a claim for punitive damages pursuant to Idaho Code §6-160.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1. For a judgment against Defendants for special damages in a sum subject to proof at trial and interest thereon, pursuant to the applicable statutes of the State of Idaho.

2. For a judgment against Defendants for general damages in a sum subject to proof at trial.

DATED October 11, 2024

**SERNA & ASSOCIATES PLLC**

*/s/ Enrique G. Serna*
Enrique G. Serna
Lead Counsel

COMPLAINT AND DEMAND FOR JURY TRIAL - 14