Enrique G. Serna ISB No. 12114
Serna & Associates PLLC
950 W. Bannock St., Suite 1100
Boise, Idaho 83702
Tel: (210) 865-5800
Email: enrique@serna-associates.com
Lead Counsel

# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PEDRO MANUEL ALCANTAR, Deceased, and survived by his wife, DULCE MARIA GONZALEZ, MARTA MEJIA VELASQUEZ, RICARDO ALCANTAR SANDOVAL; LUIS ENRIQUE SERENO, Deceased, and survived by his wife, SANDRA RUBIO MARTINEZ, individually and on behalf of her minor son LS, and daughter, MS; JOSE GUADALUPE SANCHEZ, Deceased, and survived by MARIA MEDINA, LUCIANO SANCHEZ, LUCIANO SANCHEZ MEDINA; JAVIER GOMER ALCANTAR, Deceased, and survived by his wife, CAROLINA REBOLLO, and on behalf of her minor son, EG, and daughter, SG; BRANDON PONCE, Deceased, and survived by FANNY ANDREA PONCE, CHRISTIAN PONCE, ARTURO PONCE; ABEL MEJIA, Deceased, and survived by his wife, JASMINE MOLINA, individually and on behalf of her minor daughter, HM, daughter, KM; RICARDO ALCANTAR MEJIA; JOSE ALCANTAR MEJIA; ,<br>Plaintiffs,<br>v.<br>LUIS GARCIA DIAZ, Individually, ADRIAN SIRBU, individually; TOWER COMMUNICATIONS SOLUTIONS, LLC; J&A DRILLING AND CONSTRUCTION, LLC, MILLENIUM NETWORKS, LLC d/b/a SILVER STAR COMMUNICATIONS, WESTERN MOUNTAIN, INC., GOLD COMMUNICATIONS EXPERT INC., and SIGNET CONSTRUCTION, LLC,<br>Defendants. | CASE NO.4:24-cv-00479<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT MILLENNIUM NETWORKS, LLC'S MOTION FOR SUMMARY JUDGMENT** |

PLAINTIFFS MEMORANDUM IN OPPOSITION TO MILLENIUM SJ

## I.    INTRODUCTION

This case not only involves the tragic loss of multiples lives and injuries to Plaintiffs Pedro Alcantar, other individual plaintiffs and the families they supported ("Individual Plaintiffs and their heirs") due to a head-on vehicle collision which occurred as part of the work on a construction project in Eastern Idaho but also reeks of greed and irony. Although general contractor Defendant Millennium Networks, LLC d/b/a Silver Star Communications ("Millennium" or "Silver Star") has retained all of the economic benefits generated by the work of its several downstream subcontractors and their employees on this multi-million dollar City of Rexburg fiber optics construction and burial project ("Project"), Silver Star has filed a motion for summary judgment seeking this Court's protection after Silver Star and the subcontractors on the Project "buried their heads in the sand" concerning the operation and safety issues related to the Project. Silver Star's brazen attempt to totally absolve itself of liability for its own negligence and the negligent and reckless acts of subcontractors during their work on the Project should be recognized for what it is and not be allowed by this Court.

As more fully discussed below, there are, at minimum, numerous genuine issues of material fact on the Individual Plaintiffs and their heirs' claims for negligence, negligent infliction of emotional distress and intentional infliction of emotional distress against Silver Star under both individual liability and joint and several liability theories recognized by Idaho law. For these reasons, Silver Star's motion for summary judgment should – and, indeed, must – be denied.

## II.    ARGUMENT

### A.  Under the Facts and Legal Principles Governing the Resolution of this Matter, this Court Should Deny Silver Star's Motion for Summary Judgment

Within the past two years, this Court, relying on Supreme Court and Ninth Circuit authority, has articulated the standard which it must apply in resolving a motion for summary judgment

PLAINTIFFS MEMORANDUM IN OPPOSITION TO MILLENIUM SJ

brought pursuant to Federal Rule of Civil Procedure 56:

> Summary judgment is appropriate when the moving party can show that, as to any claim or defense—or part of any claim or defense— "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
>
> The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. Of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the court must "view [ ] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted).

*Mills v. Union Pac. R.R. Co.*, No. 1:22-CV-00143-DCN, 2024 WL 185246, at *3 (D. Idaho Jan. 16, 2024).  Similarly, the Court, citing the same sources of authority and its own prior case law, has confirmed that when exercising subject matter jurisdiction based on diversity of citizenship, it "must apply state substantive law in the way it believes the Idaho Supreme Court would apply" governing principles of state law. *Byers v. Bull*, No. 4:23-CV-00494-DCN, 2024 WL 4728423, at *2 (D. Idaho Nov. 8, 2024) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003); and *Arriwite v. SME Steel Contractors, Inc.*, 2021 WL 1218451, at *6 (D. Idaho Mar. 31, 2021)).

As discussed below, this Court, applying the foregoing standards to the factual record before it, should deny Silver Star's motion for summary judgment under well-settled principles of Idaho tort law.

**B. Because, at Minimum, Genuine Issues of Material Fact Exist Concerning Project General Contactor Silver Star's Attempt to Avoid Responsibility/Liability for its own Tortious Acts and those of its Subcontractors, Silver Star's Motion for Summary Judgment on this Basis Must be Denied[1]**

Silver Star spends a substantial portion of its brief attempting to avoid liability and responsibility for the harm suffered by the plaintiffs by relying on the general rule that a principal cannot be liable for the torts of an independent contractor. However, the Idaho Supreme Court long ago identified the general rule, but also recognized the exceptions, concerning the liability of general contractors for the tortious acts of their subcontractors, stating as follows:

> The general rule is that a general contractor is not liable for injuries occasioned by the negligent acts or omissions of his subcontractor or of the latter's servants, unless the circumstances bring the case within some exception to the general rule. Of the various recognized exceptions to the rule, the only one possibly applicable here is where the general contractor retains or exercises control over the work of the subcontractor or his servants, other than a limited power of general supervision for the purpose of seeing that the subcontractor did the work properly according to the plans and specifications.[2]

*Gates v. Pickett & Nelson Const. Co.*, 91 Idaho 836, 842, 432 P.2d 780, 786 (1967), *overruled in part on other grounds by Smith v. State*, 93 Idaho 795, 473 P.2d 937 (1970).[3]

---

[1] Throughout this Memorandum, Individual Plaintiffs and their heirs will use the phrase "At Minimum" regarding genuine issues of material fact which exist concerning the claims and issues in this case. They have done so because, in many instances, the claims and issues under discussion are free of factual dispute such that the Individual Plaintiffs and their heirs (and not Silver Star) would be entitled to summary judgment.

[2] The Idaho Supreme Court did not specifically reference the Restatement (Second) of Torts in articulating the retention or exercise of control exception to the general rule; however, this exception essentially tracks the language in Restatement (Second) of Torts, Sec. 414.

[3] *Smith* overruled that aspect of *Gates* and other Idaho Supreme Court decisions which had held that the State of Idaho and its political subdivisions, absent a waiver, enjoyed sovereign immunity concerning tort claims against them. *Smith*, 93 Idaho at 800-803, 473 P.2d at 942-943. Neither Idaho nor any of its political subdivision have been sued in this case. As such, *Gates* -- both its general rule and its reference to the exceptions -- remains good law applicable to this private sector dispute.

The above-quoted general rule is derived from Restatement (Second) of Torts § 409. Both the Ninth Circuit and two former Idaho Supreme Court Justices have opined concerning the general rule's "no liability" provision as follows:

> The rule is riddled with exceptions so that there is "only a small area in which the so-called general rule operates." … "[t]he *Restatement (Second) of Torts* § 409, comment b, … states that the rule "can now be said to be general only in the sense that it is applied when no good reason is found for departing from it."

*Sugimoto v. Exportadora De Sal, S.A. De C.V.,* 19 F.3d 1309, 1312 (9th Cir. 1994); *Peone v. Regulus Stud Mills, Inc.,* 113 Idaho 374, 381–82, 744 P.2d 102, 109–10 (1987) (Bistline, J. and Huntley, J., dissenting).[4]

Thus, Idaho appellate courts, the Ninth Circuit and at least one judge in this judicial district have made clear that the general rule and the numerous exceptions set forth in the Restatement (Second) of Torts imposing liability on general contractors for the tortious acts of subcontractors constitute the law in Idaho. *Ek v. Herrington*, 939 F.2d 839, 843 (9th Cir. 1991) (citing *Peone,* 113 Idaho at 378-379, 744 P.2d at 106–107) ("Idaho has used the *Restatement (Second) of Torts* in developing its law regarding employer liability for independent contractors' torts."); *Gneiting v. Idaho Asphalt Supply, Inc.*, 130 Idaho 393, 395 n.1, 941 P.2d 932, 934 n.1 (Ct. App. 1997) ("There are numerous exceptions to this general rule. Many of them are referenced in sections 410—429 of the RESTATEMENT (SECOND) OF TORTS (1965)."); *Idaho Waste Sys., Inc. v. U.S. Air Force*, No. 18-CV-0229-SRB-WJE, 2020 WL 697914, at *9 (D. Idaho Jan. 27, 2020), *report and recommendation adopted sub nom. Idaho Waste Sys., Inc. v. United States Air Force*, No. 18-CV-00229-SRB-WJE, 2020 WL 699824 (D. Idaho Feb. 11, 2020) (citing *Fagundes v. State*, 116 Idaho

---

[4] Comment b. to Section 409, quoting one judicial source, further provides that "[t]hese exceptions are stated in §§ 410- 429. They are so numerous, and they have so far eroded the 'general rule,'… 'Indeed it would be proper to say that the rule is now primarily important as a preamble to the catalog of its exceptions.'" (citation omitted)

173, 175-176, 774 P.2d 343, 345–46 (Idaho Ct. App. 1989) ("The Court looks to Idaho law for

what, if any, duties an employer has in relation to an independent contractor. … As Idaho follows

the Restatement, the Court will consider the applicable sections 413 and 416 in turn.").  The Idaho

Supreme Court and the Ninth Circuit also have held that, when one or more of the exceptions set

forth in sections 410-429 apply, an employer or general contractor will owe a duty of care to third

parties with respect to torts committed by lower tier/downstream contractors or subcontractors.

*Harpole v. State*, 131 Idaho 437, 441, 958 P.2d 594, 598 (1991); *Peone,* 113 Idaho at 376, 744

P.2d at 104; *McMillan v. United States*, 112 F.3d 1040, 1043, 1046-1047 (9th Cir. 1997); *Crane v.*

*Conoco, Inc*.,  41 F.3d 547, 551-552 (9th Cir. 1994).

Individual Plaintiffs and their heirs will now turn to the germane exceptions as they apply

to Silver Star.

### 1. At Minimum, Genuine Issues of Material Fact Exist Regarding Whether Silver Star Acted Negligently When Retaining Control over the Project so as to Violate a Duty of Care Owed to the Individual Plaintiffs and their Heirs

As alluded to earlier, the Restatement (Second) of Torts  § 414 provides that "[o]ne who

entrusts work to an independent contractor, but who retains the control of any part of the work, is

subject to liability for physical harm to others for whose safety the employer owes a duty to

exercise reasonable care, which is caused by his failure to exercise his control with reasonable

care."  As discussed above, the Idaho Supreme Court implicitly adopted Section 414, stating in

*Gates* that a general contractor may be liable for the tortious conduct of a subcontractor "where

the general contractor retains or exercises control over the work of the subcontractor or his

servants, other than a limited power of general supervision for the purpose of seeing that the

subcontractor did the work properly according to the plans and specifications."  91 Idaho at 842,

432 P.2d at 786.  In *Gneiting*, the Idaho Court of Appeals made clear that (1) "the level of control"

retained or exercised by the general contractor "necessary to impose liability is something less than exclusive control," 130 Idaho at 395, 941 P.2d at 934, and further that (2) "[i]t follows that th[e] general rule on nonliability is inapplicable when the principal actually retains control of the manner, means or method of performance of work undertaken by the contractor." *Id.*   The Ninth Circuit has likewise stated that, for a general contractor to be liable for a subcontractor's tortious conduct under Section 414,

> It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.... There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Martinez v. Asarco Inc*., 918 F.2d 1467, 1475 (9th Cir. 1990) (quoting comment c. to Section 414). The Ninth Circuit, however, has held that when "the plaintiff's evidence may prove something more," i.e., the government's knowledge of safety violations by the government's contractor and the failure by both the government and the contractor to take appropriate action to correct it, the district court's grant of summary judgment against an injured plaintiff and in favor of the government was improper.  *Yanez v. United States*, 63 F.3d 870, 875 (9th Cir. 1995).

At a minimum, the evidence permits a reasonable inference that Millennium, as the project owner, retained and exercised supervisory authority over the work through its project manager and inspectors, maintained ultimate customer control including the handling of complaints through its portal, and failed to conduct traffic safety meetings or vet subcontractor drivers. Under Restatement (Second) of Torts section 414 and controlling Idaho and Ninth Circuit authority, this evidence is sufficient to create a genuine issue of material fact as to whether Millennium retained control over the manner, means, or method of the work and thereby owed and breached a duty of reasonable care.

2.  **At Minimum, Genuine Issues of Material Fact Exist Regarding Whether Silver Star Acted Negligently in Hiring Subcontractors for the Project so as to Violate a Duty of Care Owed to the Individual Plaintiffs and their Heirs**

Restatement (Second) of Torts, § 411 provides as follows:

An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor

(a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done or

(b) to perform any duty which the employer owes to third persons.

in *Joslin v. Idaho Times Pub. Co.*, 60 Idaho 235, 91 P.2d 386 (1939), the Idaho Supreme Court, over eight decades ago and not long after the adoption of the Restatement (First) of Torts, addressed the issue of a newspaper company's liability in a case where an independent contractor who was driving a motorcycle while delivering newspapers struck and injured a third party.  In reversing the grant of a nonsuit in favor of the company, the Court stated that "[i]t is often laid down as one of the conditions required to relieve the owner from liability for the negligent acts of an independent contractor employed by him, that he shall exercise due care to secure a competent contractor for the work, and that if he fails to exercise such care, he may be liable for the negligent acts of his contractor." 60 Idaho at 235, 91 P.2d at 388. The Court based its decision on the fact the company had taken "no care whatever on its part in [the driver's] selection or any investigation or instruction as to how to operate the motorcycle, automobile, or whatever conveyance or means of delivery he might use; in fact the record presents a complete indifference as to how [the driver] delivered the newspapers." *Id*.

Likewise, in *L.B. Foster Co., v. Hurnblad*, 418 F.2d 727 (9th Cir. 1969), the Ninth Circuit was faced with a personal injury action where the Hurnblads sued L. B. Foster, a steel warehousing and fabricating company and several of Foster's subcontractors for injuries sustained  by the

Hurnblads when a tractor-trailer hauling Foster's product collided with their vehicle.  The Court

of Appeals analyzed Section 414's requirements under Washington state law regarding a

principal's liability for negligent selection of a subcontractor and reviewed Foster's (the only

appellant's) appeal of a jury verdict against it and the other defendants, including Transport

Supply, who hired the driver. *Id*. at 728-729 & n.2.[5] The Circuit Court affirmed the district court's

denial of Foster's post-trial motions and upheld the verdict and judgment against Foster, holding

as follows:

> … [W]e hold that plaintiffs have made a substantial showing that Transport Supply
> was such a fly-by-night operation that the jury could reasonably conclude that it
> lacked competence in producing safe equipment. Plaintiffs introduced substantial
> evidence tending to show that: (1) Transport Supply had only been in existence for
> six months prior to the time Foster contracted with it to haul the steel; (2) the
> company had only a telephone number by and a post office box; (3) several
> witnesses familiar with trucking in the area had never heard of it; (4) the company
> offered to haul interstate but did not have a Commission certificate authorizing it
> to do so; (5) the company had engaged in illegal rate cutting in prior hauls for
> Foster; and (6) in general, unlicensed carriers haul at reduced rates, and as a result
> do not have well-maintained highway equipment and experienced drivers, and
> often go out of business as the result of an accident.

*Id.* at 730. The Court of Appeals thought that, because L.B. Foster Co. was a sophisticated and

recurrent shipper whose product  -- fabricated steel – "presented an unusual highway hazard,"

Foster was not entitled to assume that its contractor, Transport Supply, who had hired the driver

Knight, was conducting business in conformance with the law and utilizing safe equipment, but

rather, owed a duty of "special care" to the Hurnblads (and the public generally) in selecting the

carrier. *Id*. at 731.  Most important, the Court of Appeals was not troubled by the lack of evidence

---

[5] Interestingly, given the parallel facts in our case, Transport Supply did not contest the
Hurnblads' negligence claim against it, but rather, defaulted prior to the trial. 418 F.2d at 728
n.1.

showing that Foster had actual knowledge of Transport Supply's incompetence, "conclud[ing] that the evidence warranted a jury finding that Foster failed to make a reasonable inquiry as to Transport Supply's competence in supplying safe highway equipment." *Id*. at 730-731.

Several courts, applying the Section 411 exception, have denied defendants' motion for summary judgment or reversed grants of summary judgment in favor of defendants who had hired contractors or subcontractors and against individual plaintiffs or their heirs when the individual plaintiffs died or were injured in vehicle collisions and the hiring party failed to make reasonable inquiry about the driver's prior history or reputation for driving while intoxicated. *Wright v. Kelleher*, No. 021589A, 2008 WL 4635860, at *4 (Mass. Super. Sept. 10, 2008); *Lincoln v. Fairfield-Nobel Co.*, 76 Mich. App. 514, 518, 257 N.W.2d 148, 150 (1977); Hudgens *v. Cook Indus., Inc.*, 521 P.2d 813, 814 and 816 (Okla. S. Ct. 1974). Likewise, several courts have reversed grants of summary judgment in favor of a party hiring a subcontractor and against plaintiffs pursuing wrongful death or personal injury claims in vehicle collision cases under the Section 411 exception where the driver of the vehicle did not possess a valid driver's license and the party hiring them did not make inquiry about the matter. *McKenna v. Beesley*, 67 Cal. App. 5th 552, 566-584 & n. 16, 282 Cal. Rptr. 3d 431, 441-456 & n.16 (2021); *Puckrein v. ATI Transport*, 897 A.2d 1034, 1035 (N. J. 2006); *Tansey v. Robinson*, 164 N.E.2d 272, 276-277 (Ill. App. 1960). In *Tansey*, this result obtained when the driver "Robinson had a record of 29 convictions for traffic offenses [,] [h]is license had been taken away from him, and he had no permit from the Illinois Commerce Commission to operate the business of carrying property for hire." 164 N.E.2d at 276. And, in *Puckrein* the court was emphatic in its decision, stating that "[c]learly, under our law, the hauler's basic competency included, at a minimum, a valid driver's license, a valid registration

certificate, and a valid liability insurance identification card. … Without those, the hauler has no right to be on the road at all." 897 A.2d at 1043.

At a minimum, the evidence supports a reasonable inference that Millennium failed to exercise reasonable care in selecting and hiring subcontractors for work that involved a foreseeable risk of physical harm. The record permits a finding that Millennium performed no independent due diligence of subcontractors despite knowing that numerous subcontractors would be used, did not dictate or evaluate which subcontractors or drivers would be hired, did not verify driver rosters, licenses, or insurance, and allowed work to proceed without confirming basic indicators of contractor competency. Under Restatement (Second) of Torts section 411 and the cited Idaho and persuasive federal and state authority, this evidence is sufficient to create a genuine issue of material fact as to whether Millennium negligently hired incompetent subcontractors, including an unlicensed driver, thereby breaching a duty of care owed to Plaintiffs and their heirs. [6]

---

[6] Silver Star may argue that the Ninth Circuit's decision in *L.B. Foster Co.* is not controlling concerning our pending matter because Foster only owed the Hurnblads a special duty of care to inquire about the competency of the carrier, Transport Supply, hired by Foster due to the unusually dangerous nature of the goods shipped. Any such argument would fail for several reasons.

First, *L.B. Foster Co.* was a shipping case, while our case is not. Second, the Ninth Circuit's decision was predicated, not just on the dangerous nature of the goods being shipped, but also on the sophistication and experience of the shipper Foster and on the amalgam of facts suggesting Transport Supply's incompetency. Third, and most important, Idaho law concerning negligent selection of a contractor – as discussed above in the *Joslin* matter -- in nowise suggests, let alone requires, that the task or project undertaken by the subcontractor be unusually dangerous to afford the injured party a remedy against the contractor. *See Scott v. Milosevic*, 372 F. Supp. 3d 758, 766 & n. 10 (N.D. Iowa 2019) (refusing to follow that aspect of the Ninth Circuit's decision in *L.B. Foster Co.* concerning any purported requirement of shipping unusually dangerous goods because (1) comment a. to Section 411 states that "[t]he amount of care which should be exercised in selecting an independent contractor is that which a reasonable man would exercise under the circumstances, and therefore varies as the circumstances vary," (2) characterizing *L.B. Foster Co.*'s reference to the content or type of the load carried as an "outlier" and "not particularly persuasive" even in shipping cases, and (3) noting that Iowa law had not limited the Section 411 exception to cases involving shipment of unusually dangerous

**3.  At Minimum, Genuine Issues of Material Fact Exist Regarding Whether Silver Star Acted Negligently in Violating Non-Delegable Duties Associated with the Fiber Optics Project so as to Violate a Duty of Care Owed to the Individual Plaintiffs and their Heirs**

Section 413 of the Restatement (Second) of Torts provides as follows:

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Similarly, Section 416 of the Restatement (Section) of Torts provides as follows:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

And Section 427 of the Restatement (Second) of Torts provides that

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.[7]

---

goods).

[7] The Ninth Circuit has stated that Sections 413, 416 and 427 "almost duplicate" each other, since "[a]ll three sections address the nondelegable duty employers have for work that involves unusual dangers inherent in the work." *Ek*, 939 F.2d at 843 & n.3.

The Idaho Supreme Court has made clear that "[c]ourts have not hesitated to adopt §§ 413 and 416 with regard to a duty owed to injured members of the general public." *Peone*, 113 Idaho at 376, 744 P.2d at 104.[8]  Both the Idaho Supreme Court and the Ninth Circuit applying Idaho law have held that the above-quoted Restatement provisions constitute nondelegable duties of the initial employer or contractor. *Peone*, 113 Idaho at 376 and 378, 744 P.2d at 104 and 106; *Ek*, 939 F.2d at 843.  Discussing the matter in the related context of negligent entrustment of a vehicle, courts have stated that "[a]n automobile is not a dangerous article *per se* but may become one if it is operated by a person who is unskilled in its use. … Thus, a person may be liable for negligently entrusting an automobile to one whom the person knows or should know is incompetent, inexperienced, or reckless." *Eyrich v. Est. of Waldemar*, 327 Ill. App. 3d 1095, 1098, 765 N.E.2d 504, 506 (2002) (citations omitted).  Ultimately, both the Idaho Supreme Court and the Ninth Circuit have further stated that "application of these [nondelegation] exceptions to employer nonliability is" … "a question of fact for the jury, unless, viewing the facts in the light most favorable to the non-moving party in a summary judgment motion, the answer is clear as a matter of law." *Ek*, 939 F.2d at 843 (citing *Fagundes v. State,* 116 Idaho at 178, 774 P.2d at 348 (C.J. Walters, concurring and dissenting) and *cf. Peone,* 744 P.2d at 106–07). [9]

---

[8] Several other courts have held that Section 427 likewise creates a duty in the employer or initial contractor to protect members of the general public.  *See, e.g.*, *Wanzek v. Allstate Tower, Inc.*, No. 3:11-CV-94, 2013 WL 3229904, at *16 (D.N.D. June 25, 2013); *Enriquez v. Cochran*, 1998-NMCA-157, ¶ 93, 126 N.M. 196, 221, 967 P.2d 1136, 1161 (N.M. App. 1998);  *Morris v. City of Soldotna*, 553 P.2d 474, 481 (Alaska 1976).

[9] To be sure, in *Ek*, the Ninth Circuit granted summary judgment under the Restatement's nondelegation sections (Sections 413, 416 and 427) in favor of the employer of an independent contractor where an employee of the independent injured a member of the general public while driving a logging truck.  In so holding, the Ninth Circuit stated as follows:

> We accept the *Restatement*'s suggestion that the risk posed by malfunctioning brakes is an ordinary one that an employer of an independent contractor has no duty to provide against. Similarly, we hold that the risk posed by overloading a logging

At a minimum, the evidence supports a reasonable inference that Millennium breached non-delegable duties associated with work involving a foreseeable and peculiar risk of physical harm. The record permits a finding that no due diligence was performed on Garcia-Diaz, that Millennium allowed a subcontractor to operate a vehicle without a valid driver's license, permitted the vehicle to be taken off-site and used daily, and failed to vet drivers or subcontractors despite retaining project ownership and supervisory authority. Under Restatement (Second) of Torts sections 413, 416, and 427, and controlling Idaho and Ninth Circuit authority, these circumstances present a genuine issue of material fact for the jury as to whether Millennium failed to ensure reasonable precautions were taken and therefore violated a non-delegable duty owed to Plaintiffs and their heirs.[10]

    **4.   At Minimum, Genuine Issues of Material Fact Exist Regarding Whether Garcia Diaz was Acting within the Scope of his Employment when he Drove the Subcontractors' Truck into the Van Transporting the Individual Plaintiffs**

Silver Star also contends that, because Garcia Diaz was acting outside the scope of his employment on the Project, it cannot be held liable for his tortious conduct.  However, both factually and legally, Silver Star's argument must be rejected out of hand.

---

truck is not a peculiar risk that arises in the normal course of logging and for which special precautions must be taken.

939 F.2d 839, 844 (9th Cir. 1991). However, the Individual Plaintiffs and their heirs' case is distinguishable from *Ek* and, therefore, properly subject to the inherently dangerous and peculiar risk exceptions set forth in Sections 413, 416 and 427-- given the reckless act of drunk driving by defendant Garcia Diaz which Silver Star (and the other subcontractors) had a duty to prevent.
[10]  Because the Ninth Circuit in *Ek* held that, under Idaho law, the Restatement Section 424 exception to the nonliability rule –unlike Sections 413, 416 and 427 -- does not allow members of the general public to pursue claims against the initial employer or contractor based on tortious conduct by a subcontractor or its employee, the Individual Plaintiffs and their heirs have not pursued a claim under Section 424.

This Court, quoting the Idaho Supreme Court, has recently stated that "[u]nder the doctrine of respondeat superior, an employer is liable in tort for the tortious conduct of an employee committed within the scope of employment," *Hogue v. VitalCore Health Strategies, LLC*, No. 1:25-CV-00070-DCN, 2025 WL 3158029, at *3 (D. Idaho Nov. 12, 2025) (quoting *Teurlings v. Larson*, 156 Idaho 65, 74, 320 P.3d 1224, 1233 (2014) (internal quotation marks omitted)), and has also made clear that the "true test" is whether "the offending employee [was] in the performance of the master's duty *in reference to the particular act causing the injury*." *Torres v. Sugar-Salem Sch. Dist. # 322*, No. 4:17-CV-00178-DCN, 2019 WL 4784598, at *8 (D. Idaho Sept. 30, 2019) (quoting *Claris v. Oregon S. L. R.R.*, 51 P.2d 217, 218 (Idaho 1935)) (emphasis added).

The Idaho Supreme Court has also held that "[s]cope of employment 'refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.'" *Nava v. Rivas-Del Toro*, 151 Idaho 853, 857, 264 P.3d 960, 964 (2011) (quoting *Richard J. and Esther E. Wooley Trust v. DeBest Plumbing, Inc.,* 133 Idaho 180, 183–84, 983 P.2d 834, 837–38 (1999)). Thus, "it is apparent that serving the 'master' is required in order for the conduct to be within the scope of employment, *Wooley Trust*, 133 Idaho 1at 184, 983 P.2d at 838, and " '[a]n employee's purpose or intent, however misguided in its means, must be to further the employer's business interests." *Nava*, 151 Idaho at 858, 264 P.3d at 965 (quoting *Wooley Trust,* 133 Idaho at 184, 983 P.2d at 838) (quoting *Podolan v. Idaho Legal Aid Services, Inc.,* 123 Idaho 937, 945, 854 P.2d 280, 288 (Ct.App.1993)) (emphasis added). Specifically, the Supreme Court has long held and confirmed a number of years ago that "[I]f the automobile causing the accident belongs to the defendant, and is being operated at the time of the accident by one in the general employ of the defendant, there is a reasonable

presumption that at such time he was acting within the scope of his employment and in furtherance of his master's business... ." *Nava*, 151 Idaho at 860, 264 P.3d at 967 (quoting *Manion v. Waybright,* 59 Idaho 643, 656, 86 P.2d 181, 186 (1938)).

Idaho appellate courts and the Ninth Circuit applying Idaho law have stated that whether an employee acted within the scope of employment is generally a factual question to be decided by the trier of fact. *Manion v. Waybright,* 59 Idaho 643, 656, 86 P.2d 181, 186 (1938) (cited in *Podolan,*123 Idaho at 945, 854 P.2d at 288); *Nat'l Union Fire Ins. Co. of Pittsburg v. Aerohawk Aviation, Inc.*, 258 F. App'x 75, 78 (9th Cir. 2007). Applying this standard, both the Idaho Supreme Court and the Ninth Circuit have not hesitated to reverse grants of summary judgment in favor of employer in tort cases caused by an employee when the facts concerning the scope of employment issue were in dispute. *Teurlings*, 156 Idaho at 71-7465, 74, 320 P.3d at 1230-1233; *Nat'l Union Fire Ins. Co.*, 258 F. App'x at 78.[11]

At a minimum, the evidence permits a reasonable inference that Garcia Diaz was acting within the scope of his employment at the time of the collision. The record supports that he was driving his employer's work truck to perform post-installation work for a Millennium residential customer, using tools stored at a worksite to which he had authorized access, and that his personal vehicle was not in use. The evidence further supports that Garcia Diaz served as a crew lead, supervised and paid workers, took directions from multiple project entities including Millennium, and was permitted to communicate directly with customers to address installation issues. Under Idaho respondeat superior law, these facts create a genuine issue of material fact as to whether

---

[11] Although the Ninth Circuit's Memorandum decision in *National Union Fire Insurance Co.* is an unpublished decision, because it was decided after January 1, 2007, it properly may be cited as authority to this Court. *See* Ninth Circuit Rule 36-3 and F.R.A.P. 32.1.

Garcia Diaz was acting in furtherance of his employer's business when the collision occurred,

precluding summary judgment.

> **B. Because, at Minimum, Genuine Issues of Material Fact Exist Concerning Whether Silver Star is Jointly and Severally Liable for the Tortious Acts of its Subcontractors Inflicted Upon the Individual Plaintiffs and their Heirs, Silver Star's Motion for Summary Judgment on this Basis Must be Denied**

A visiting Judge in this judicial district has described the evolution of joint and several

liability law in Idaho, initially stating as follows:

> Until 1987, the Idaho Supreme Court recognized the common law rule of joint and several liability, whereby "[e]ach tortfeasor whose negligence is a proximate cause of an indivisible injury should remain individually liable for all compensable damages attributable to the injury ... and when tortious acts of several parties concurrently cause an injury, each tortfeasor is liable for the whole of the damage."

*Bruderer v. PacifiCorp*, No. CV-06-0271EJLQ, 2007 WL 1725456, at *9 (D. Idaho June 11, 2007) (quoting *Doe v. Cutter Biological Inc.,* 852 F.Supp. 909, 915 (D.Idaho 1994) (quoting *Tucker v. Union Oil Co.,* 100 Idaho 590, 600, 603 P.2d 156, 166 (1979)).

The judge then turned to the 1987 legislative enactment which limited -- but did not

eliminate -- joint and several liability in Idaho, further stating as follows:

> However, in 1987, the Idaho legislature enacted Idaho Code § 6–803(3), which provides, in pertinent part, that "[t]he common law doctrine of joint and several liability is hereby limited to causes of action listed in subsection (5) of this section." Subsection (5) states:
>
>> A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, "acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.

> I.C. § 6–803(5)

> *Bruderer, Id.*

Several Idaho courts – both federal and state – have opined or held in cases involving various types of injury to plaintiffs that plaintiffs have proven or pleaded that defendants engaging in tortious conduct were or might be jointly and severally liable under Section 6-803(5).  See, e.g., *Moonlight Mountain Recovery, Inc. v. McCoy*, No. 1:24-CV-00012-BLW, 2025 WL 371020, at *5 (D. Idaho Feb. 3, 2025) (using proprietary and confidential information to injure a competitor); *In re Monroe*, 578 B.R. 834, 839 (Bankr. D. Idaho 2017) (conspiracy to physically attack judgment creditor); *Moon v. N. Idaho Farmers Ass'n*, No. CV 2002 3890, 2002 WL 32129530, at *5 (Idaho Dist. Nov. 30, 2002) (field burning producing hazardous substances).

Specifically, Interpreting Section 6-803(5)'s remaining joint and several liability provision, the Idaho Supreme Court has defined the difference between agency and acting in concert, stating that "[w]hile very similar, acting in concert is not the same as agency under Idaho law. The key difference between the two is that an agent is subject to the principal's control, while persons acting in concert are not necessarily subject to another's control." *Knutsen v. Cloud*, 142 Idaho 148, 151, 124 P.3d 1024, 1027 (2005).  Outside the context of Section 6-803(5), the Idaho high court has defined conduct as reckless "when a person makes a conscious choice as to his or her course of action under circumstances where the person knew or should have known that such action created a high probability that harm would actually result. The term 'reckless' does not require an intent to cause harm. Reckless means more than ordinary negligence." *Herrett v. St. Luke's Magic Valley Reg'l Med. Ctr., Ltd., 1*64 Idaho 129, 136, 426 P.3d 480, 487 (2018). And it is beyond cavil that driving while drunk or intoxicated and causing death or injury to others is reckless, *De Calice v. Woodin*, No. FST CV 24-6067140 S, 2025 WL 900767, at *2 (Conn. Super. Ct. Mar. 18, 2025); *United States v. Rutherford*, 54 F.3d 370, 376 & n.15 (7th Cir. 1995); *State v. Gerike*, 2008-Ohio-4722, ¶ 17, 2008 WL 4278245 (Ohio Ct. App. 2008);  *Balek v. Short*, No. CV 2008 4562, 2009

PLAINTIFFS MEMORANDUM IN OPPOSITION TO MILLENIUM SJ

WL 2929321, at *2–3 (Idaho Dist. Sept. 11, 2009) – indeed, several courts would say reckless per se. *Interinsurance Exch. v. Flores*, 45 Cal. App. 4th 661, 672, 53 Cal. Rptr. 2d 18, 23 (1996) (cited in 7 Am. Jur. 2d, Automobile Insurance, *Negligent, Reckless or Wanton Acts* § 155); *Graham v. State*, 27 Ala. App. 505, 507, 176 So. 382, 384 (Ala. Ct. App. 1937).

At a minimum, the record supports a reasonable inference that Millennium and its contractors and subcontractors were acting in concert and/or in agency relationships to further the fiber optic burial project authorized by the City of Rexburg. The evidence permits a finding that Millennium knew Western Mountain retained subcontractors, including Gold Communications and J&A Drilling, that Garcia Diaz worked under those entities, and that no party conducted vetting regarding driver licensing, safety qualifications, or fitness to operate vehicles. The record further supports that Garcia Diaz was acting in furtherance of the project at the time of the collision. Under Idaho Code section 6-803(5) and controlling Idaho authority, these facts create a genuine issue of material fact as to whether Millennium is jointly and severally liable for the tortious conduct of its subcontractors, requiring denial of summary judgment on this basis. [12]

---

[12] Silver Star relies on Judge Winmill's (not, as it states in its Memorandum, this Court's) decision in *Adams v. United States,* No. 4:CV 03-49-BLW, 2011 WL 1230806 (D. Idaho March 30, 2011) and his interpretation of the Idaho Supreme decision in *Horner v. Sani-Top, Inc.*, 143 Idaho 230, 141 P.3d 1099 (2006) in arguing that Section 6-803(5)'s joint and several liability provision should not be applied against it in this case.

However, in *Horner*, the Idaho Supreme Court, in concluding that defendants Sani-Top, a countertop manufacturer and packager, and Home Depot were "plainly not 'acting in concert' with one another and neither acted 'as an agent or servant' for the other" when a countertop sold by Sani-top to Home Depot fell from a shelf and struck and injured a child, spent no time explaining why it reached that conclusion. *See Id*. at 235, 141 P.3d at 1104. In addition, neither the Idaho high court in *Horner* nor Judge Winmill in *Adams* cited or discussed the Idaho high court's decision in *Cloud* less than a year prior to *Horner*, which earlier decision took a more expansive view of Section 6-803(5)'s use of the term "acting in concert" than "agency" when it held that "persons acting in concert are not necessarily subject to another's control." *Cloud*, 142 Idaho at 151, 124 P.3d at 1027. Moreover, Judge Winmill's decision, which refused to allow joint and several liability against the Bureau of Land Management ("BLM") and Dupont when

**C.  At Minimum, there are Genuine Issues of Material Fact on the Duty and Proximate Cause Issues on Individual Plaintiffs and their Heirs Claims for Negligence and Negligent Infliction of Emotional Distress**

**1.  Silver Star owes the Individual Plaintiffs and their Heirs a Duty of Care for at Least Two Reasons**

Individual Plaintiffs and their heirs have shown above that Silver Star, as the initial contractor, owed them a duty of care under the retain control, negligent selection of (sub)contractors, and nondelegable duty exceptions to Restatement (Second) of Torts general no liability rule.  (*See supra* p. 6 and cases cited therein).  In addition, this Court, applying Idaho law, refused to grant summary judgment on the duty issue in favor of a defendant and against an injured plaintiff on a negligent supervision claim, stating as follows:

> The District counters that this claim requires proof of "actual knowledge," for a duty to rise, and here, Torres cannot prove that the District had actual knowledge of Owen's misconduct. Torres argues that a different standard applies. She cites to an Idaho Court of Appeals case, which states:

> In the context of negligent supervision, duty is the product of the supervisor's "special relationship" with the supervised individual, not with the injured person....

---

pesticides used to kill invasive weeds destroyed crops and when the BLM and Dupont did not intend the results of their conduct,  ignored his own prior decision in the same case allowing plaintiffs to amend their Complaint to allege that theory and holding that the plain language of Section 6-803(5), which requires defendants to act in concert by "pursuing a  common plan … which results in the commission of an intentional or reckless tortious act" but has "no requirement that they pursue a common plan to commit a tort … . " *Adams*, 2011 WL 1230806, at *1.

Thus, Judge Wimill's later decision got it wrong – both by (1) interpreting Section 6-803(5) "acting in concert /common plan language narrowly and (2) focusing on the defendants' lack of intent to commit a tortious act, when a non-intentional tort  – one driven by recklessness – satisfies the statutory requirement.  Alternatively, even accepting Judge Winmill's interpretation of Section 6-803(5), our case is distinguishable from *Adams* in that Silver Star and the subcontactors pursued a common plan to provide the City of Rexburg and its residents with fiber optic coverage which resulted in the commission of a reckless tortious act against the Individual Plaintiffs and their heirs.  For these reasons, Judge Winmill's decision in *Adams* is inapposite.

The duty requires the supervisor who knows of the supervisee's dangerous propensities to control the supervisee so he will not injure third persons. [The Idaho] Supreme Court has held that the duty described in the RESTATEMENT (SECOND) OF TORTS § 319 applies to questions of negligent supervision in Idaho. That section states: One who takes charge of a third person whom he *knows or should know* to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

*Podolan v. Idaho Legal Air Services, Inc.*, 854 P.2d 280, 289 (Idaho Ct. App. 1993) (internal citations omitted). Torres argues that the District was put on notice numerous times that Owen was engaging in behaviors that could harm not only a third party, but Torres directly …, yet the District did not properly supervise him.

A reasonable jury could find based on the above standard and facts that the District was negligent in its supervision of Owen and that harm to a third party was foreseeable. At the very least, there are disputed facts that preclude summary judgment at this time.

*Torres,* 2019 WL 4784598, at *25 (emphasis added). Similarly, the Idaho Supreme Court has discussed the duty issue in a vehicle collision case, stating

Clearly a duty can be owed to more than single individuals known to the tort-feasor. In a case like the instant one, the duty is owed to a class rather than a single individual. With a drunk driver on the highways, it is strictly a matter of chance who may become his victim. For certain, however, potential victims include those persons in the class of motorists on the same highway. … Here, the admitted negligent supervision of Bloom by the probation officer foreseeably created a potential for harm to those motorists whom Bloom would encounter on the state's highways. *The probation officer owed those motorists a duty.*

*Sterling v. Bloom*, 111 Idaho 211, 225, 723 P.2d 755, 769 (1986) (emphasis added).

At a minimum, the evidence supports a reasonable inference that Millennium knew or should have known the risks associated with operation of the Project and, therefore, owed a duty of care to the Individual Plaintiffs and their heirs. The record permits a finding that Millennium, as the initial contractor, retained supervisory responsibilities over the safe execution, completion,

and cleanup of the fiber optic burial work affecting public roadways and residential properties. The evidence further supports that Millennium failed to vet subcontractors, failed to verify drivers' licenses or fitness to operate vehicles, and failed to exercise reasonable oversight over subcontractors housed together while performing project-related work. Under Idaho law governing retained control, negligent supervision, and foreseeability, these facts create a genuine issue of material fact as to whether Millennium owed a duty of care to members of the public and homeowners foreseeably exposed to harm, precluding summary judgment on the duty element. [13]

## 2. Silver Star Proximately Caused the Injuries to the Individual Plaintiffs and their Heirs

Silver Star correctly points out in its Memorandum (at p.16) that "the legal responsibility element of proximate causation is satisfied if at the time of the defendant's negligent act the plaintiff's injury was reasonably foreseeable as a natural or probable consequence of the defendant's conduct." *Doe v. Sisters of Holy Cross*, 126 Idaho 1036, 1041, 895 P.2d 1229, 1234 (Ct. App. 1995). Silver Star also acknowledges that the issue of proximate causation is typically a question of fact for the jury. (S*ee* Silver Star Memorandum at 16, citing and quoting *Fragnella v. Petrovich*, 153 Idaho 266, 272-273, 281 P.2d 103, 109-110 (2012); *see also Sisters of Holy Cross*, 126 Idaho at 1041, 859 P2d at 1034 ("Resolution of this issue is nearly always for the jury. Only when reasonable minds could come to but one conclusion as to whether the plaintiff's injury was reasonably foreseeable may the judge decide this legal responsibility issue as a matter of law."). Applying this standard, Idaho appellate courts have not hesitated to reverse lower court decisions granting summary judgment in favor of a defendant when genuine issues of material fact

---

[13] Silver Star argues that any duty it owes to the Individual Plaintiffs and their heirs must be based in tort, separate and apart from any duty created by the contracts related to the Project (Silver Star Memorandum at pp. 14-15). However, this argument can be easily dispatched, because, as repeatedly discussed above, Silver Star owes a duty to the plaintiffs under various principles of Idaho tort law.

exist on the proximate cause/legal responsibility issue. See, *e.g.*, *Path to Health, LLP v. Long*, 161 Idaho 50, 58, 383 P.3d 1220, 1228 (2016); *Alegria v. Payonk*, 101 Idaho 617, 621, 619 P.2d 135, 139 (1980) (cited *in Sisters of Holy Cross*, *Id.*).

At a minimum, the evidence permits a reasonable inference that Millennium's acts and omissions were a proximate cause of the injuries suffered by the Individual Plaintiffs and their heirs. The record supports that Millennium failed to exercise supervisory oversight and reasonable safety controls over its subcontractors, and that Garcia Diaz was acting within the course and scope of his employment while traveling to perform post-installation work for a homeowner when he engaged in reckless conduct that resulted in the collision. Under Idaho law governing foreseeability and legal responsibility, reasonable jurors could conclude that the injuries were a natural and probable consequence of Millennium's failure to exercise reasonable care, creating a genuine issue of material fact on proximate cause that must be resolved by the jury.

### D.  At Minimum, There are Genuine Issues of Material Fact on Silver Star's Liability to the   Individual Plaintiffs and their Heirs' Claims for Intentional Infliction of Emotional Distress

Little need be said concerning Silver Star's liability on the Individual Plaintiffs' and their Heirs' claims for intentional infliction of emotional distress. Silver Star does not and cannot dispute that Garcia Diaz engaged in reckless, extreme, and outrageous conduct that caused the plaintiffs – particularly the Individual Plaintiffs' heirs – severe emotional distress, thereby satisfying the elements of their intentional infliction of emotional distress claim. *See Schriver v. Raptosh*, 174 Idaho 498, 508, 557 P.3d 398, 408 (2024). Rather, Silver Star argues only that because its own conduct was not outrageous, it cannot be held liable on the claim.

However, the Idaho Supreme Court has made clear that when two defendants acting in different ways are sued under different legal theories and jointly cause indivisible harm to a

plaintiff, both defendants are appropriately held liable for one defendant's intentional infliction of emotional distress. *Shields v. Martin*, 109 Idaho 132, 138, 706 P.2d 21, 27 (1985). In addition, a judge in this judicial district, assessing an intentional infliction of emotional distress claim, issued findings and conclusions after a bench trial stating that third-party plaintiff "Alderson may have been able to recover on the alternative theory that Union Pacific was liable for this intentional tort as a result of Union Pacific's negligence in hiring, supervising, or failing to fire the intentional wrongdoer. However, this is a theory of liability directed at the employer's own wrongful actions or the wrongful actions of Union Pacific's other employees, not Bonner." *Bonner v. Alderson*, No. CV02-248-S-LMB, 2005 WL 2333829, at *16 (D. Idaho Sept. 22, 2005). And, this Court has refused to grant summary judgment in favor of an employer on a plaintiffs' claim for intentional infliction of emotional distress concerning the tortious acts of its employee, stating that "the District argues that it did not owe Torres a duty of care to safeguard her from Owen's tortious conduct. As discussed above, this issue presents a question of fact that should be reserved for a jury." *Torres,* 2019 WL 4784598, at *23.

At a minimum, the record supports a reasonable inference that Millennium may be held liable for intentional infliction of emotional distress based on the reckless and outrageous conduct of Garcia Diaz and Millennium's own acts and omissions. The evidence permits a finding that Garcia Diaz engaged in reckless conduct that caused severe emotional distress by killing multiple plaintiffs and injuring others, that he was not properly supervised or vetted, lacked a valid driver's license, and had been actively working on the project for months without adequate oversight. Under Idaho law recognizing liability where defendants jointly cause indivisible harm or where an employer's negligent hiring, supervision, or retention contributes to an employee's intentional tort,

these facts create a genuine issue of material fact as to Millennium's liability, precluding summary judgment on the intentional infliction of emotional distress claims.

### III.    CONCLUSION

Viewed as a whole and in the light most favorable to the Individual Plaintiffs and their heirs, the record presents overwhelming disputes of material fact that foreclose summary judgment. Plaintiffs have produced evidence supporting reasonable inferences that Millennium retained and exercised control over the project, negligently selected and failed to vet subcontractors and drivers, breached non-delegable duties associated with inherently dangerous work, and failed to exercise reasonable supervision and safety oversight. The record further supports that Garcia Diaz was acting within the course and scope of his employment, that his reckless conduct was foreseeable, and that Millennium's acts and omissions were a proximate cause of the catastrophic injuries and deaths at issue. Finally, under Idaho law governing joint and several liability and employer responsibility for intentional torts, genuine issues of material fact exist as to Millennium's liability for the indivisible harms suffered by Plaintiffs and their heirs. This case is precisely the type in which credibility determinations, weighing of evidence, and resolution of competing inferences must be left to the jury. Because reasonable jurors could find in Plaintiffs' favor on duty, breach, causation, and liability, Millennium is not entitled to judgment as a matter of law. Accordingly, Defendant Millennium Networks, LLC's Motion for Summary Judgment must be DENIED in its entirety.

DATED: January 7, 2026.

**SERNA & ASSOCIATES PLLC**
*/s/ Enrique G. Serna*
Enrique G. Serna
Lead Counsel
Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2026, I caused the foregoing **PLAINTIFFS'
MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANT MILLENNIUM
NETWORKS, LLC'S MOTION FOR SUMMARY JUDGMENT** to be served on the
following parties via email:

**Bruce R. McAllister, ISB No. 2531**
**Cody L. Morgan, ISB No. 10331**
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
P. O. Box 7426
Boise, ID  83707-7426
Telephone: (208) 344-5800
Facsimile: (208) 344-5510
iCourt/ e-File: service@ajhlaw.com
                    bmcallister@ajhlaw.com
                    cmorgan@ajhlaw.com

*Attorneys for Defendant Signet Construction, LLC*

**James S. Thomson, II**
Aaron G. Eskue
POWERS FARLEY, PC
702 West Idaho Street, Suite 700
Boise, Idaho 83702

*Attorneys For Defendant Millennium Networks, LLC, d/b/a Silver Star Communications*

**Mr. Bren E. Mollerup**
Benoit, Mollerup, Danielson & Grieve, PLLC
126 2nd Avenue North
P.O. Box 366
Twin Falls, Idaho, 83303

*Attorneys For Defendant Western Mountain, Inc.*

**Brady Hall**
Brady Hall Law, PLLC
950 West Bannock Street, Suite 1100
Boise, Idaho 83702
brady@bhlawidaho.com
(208) 559-6656

*Attorney for Gold Communication Expert, Inc.*

_/s/ Enrique G Serna_
Enrique G. Serna

PLAINTIFFS MEMORANDUM IN OPPOSITION TO MILLENIUM SJ