Enrique G. Serna ISB No. 12114
Serna & Associates PLLC
950 W. Bannock St., Suite 1100
Boise, Idaho 83702
Tel: (210) 865-5800
Email: enrique@serna-associates.com
Lead Counsel

# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PEDRO MANUEL ALCANTAR, Deceased, and survived by his wife, DULCE MARIA GONZALEZ, MARTA MEJIA VELASQUEZ, RICARDO ALCANTAR SANDOVAL; LUIS ENRIQUE SERENO, Deceased, and survived by his wife, SANDRA RUBIO MARTINEZ, individually and on behalf of her minor son LS, and daughter, MS; JOSE GUADALUPE SANCHEZ, Deceased, and survived by MARIA MEDINA, LUCIANO SANCHEZ, LUCIANO SANCHEZ MEDINA; JAVIER GOMER ALCANTAR, Deceased, and survived by his wife, CAROLINA REBOLLO, and on behalf of her minor son, EG, and daughter, SG; BRANDON PONCE, Deceased, and survived by FANNY ANDREA PONCE, CHRISTIAN PONCE, ARTURO PONCE; ABEL MEJIA, Deceased, and survived by his wife, JASMINE MOLINA, individually and on behalf of her minor daughter, HM, daughter, KM; RICARDO ALCANTAR MEJIA; JOSE ALCANTAR MEJIA; ,<br>Plaintiffs,<br>v.<br>LUIS GARCIA DIAZ, Individually, ADRIAN SIRBU, individually; TOWER COMMUNICATIONS SOLUTIONS, LLC; J&A DRILLING AND CONSTRUCTION, LLC, MILLENIUM NETWORKS, LLC d/b/a SILVER STAR COMMUNICATIONS, WESTERN MOUNTAIN, INC., GOLD COMMUNICATIONS EXPERT INC., and SIGNET CONSTRUCTION, LLC,<br>Defendants. | CASE NO.4:24-cv-00479<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MILLENIUM NETWORKS, LLC.'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (DKT.77).** |

## I.    INTRODUCTION

Plaintiff Pedro Manuel Alcantar, the other individual plaintiffs and the families that they support and supported ("Individual Plaintiffs and their heirs" or "Plaintiffs") oppose Defendant Millennium Networks, LLC d/b/a Silver Star Communications' ("Millennium") Motion for Leave to File Supplemental Summary Judgment Evidence. Millennium's proposed "supplemental" evidence does not eliminate factual disputes. It confirms them. The very deposition testimony Millennium relies upon contains repeated admissions from Defendant Luis Garcia Diaz that he was using the Ram truck only for work, that he left the house to pick up tools or a compactor for work, that he knew what he needed to do for his work, that he sometimes worked on Saturdays, and that homeowner complaints and project-related cleanup or repair work were part of the Rexburg project ("Project").

At minimum, Millennium's own materials create genuine issues of material fact on scope of employment, work purpose, and witness credibility. Its motion should therefore be denied.

## II.    ARGUMENT

### A.  Millennium's Motion Fails Because the Governing Tort Doctrine is Respondeat Superior, and the Garcia Diaz Record Creates a Triable Issue of Fact under that Doctrine

Millennium fails to point out that Idaho appellate courts and the Ninth Circuit applying Idaho law have stated that whether an employee acted within the scope of employment is generally a factual question to be decided by the trier of fact. *Manion v. Waybright,* 59 Idaho 643, 656, 86 P.2d 181, 186 (1938) (cited in *Podolan,*123 Idaho at 945, 854 P.2d at 288); *Nat'l Union Fire Ins. Co. of Pittsburg v. Aerohawk Aviation, Inc.*, 258 F. App'x 75, 78 (9th Cir. 2007).  Applying this standard, both the Idaho Supreme Court – in a decision relied upon by Millennium in support of its motion to supplement -- and the Ninth Circuit have not hesitated to reverse grants of summary judgment in favor of employer in tort cases caused by an employee when the facts concerning the

scope of employment issue were in dispute. *Teurlings*, *v. Larson*, 156 Idaho 65, 74, 320 P.3d 1224, 1233 (2014); *Nat'l Union Fire Ins. Co.*, 258 F. App'x at 78.[1]

Millennium argues that the "coming and going" rule and its exceptions do not apply in Idaho outside the workers' compensation context. Individual Plaintiffs and their heirs do not contend otherwise. But Millennium stops the analysis too soon. Although the Idaho Supreme Court recognized that point in *Teurlings*, it also made clear in the same decision that the closely related tort doctrine of respondeat superior governs where third parties are injured. The Court stated as follows:

> Under the doctrine of respondeat superior, "an employer is liable in tort for the tortious conduct of an employee committed within the scope of employment." *Finholt*, 143 Idaho at 897, 155 P.3d at 698. The scope of one's employment includes conduct (1) which is the kind the employee is employed to perform, that (2) "occurs substantially within the authorized limits of time and space," and (3) "is actuated, at least in part, by a purpose to serve the master." *Richard J. and Esther E. Wooley Trust v. DeBest Plumbing, Inc.*, 133 Idaho 180, 184, 983 P.2d 834, 838 (1999) (quoting *Podolan v. Idaho Legal Aid Services, Inc.*, 123 Idaho 937, 944, 854 P.2d 280, 287 (Ct.App.1993)). This inquiry is focused on the service to the employer; acts done to serve the employer fall within the scope of employment while acts "pursued for a purely personal purpose do not." *Finholt*, 143 Idaho at 897, 155 P.3d at 698 (citing *Wooley Trust*, 133 Idaho at 184, 983 P.2d at 838). We also look to whether the employer had the right to control the functions and duties of the agent at the time of the negligence. *See Van Vranken v. Fence–Craft*, 91 Idaho 742, 747, 430 P.2d 488, 493 (1967).

*Teurlings*, 156 Idaho at 74, 320 P.3d at 1233. A judge in this federal judicial district has likewise stated that "[i]f the employee intended to act for the employer's purpose in any way, even partially, then the action will be deemed to be within the scope of employment. *Harper v. United States Dep't of the Interior*, No. 1:21-00197-CRK, 2022 WL 425058, at *3 (D. Idaho Feb. 11, 2022)

---

[1] Although the Ninth Circuit's Memorandum decision in *National Union Fire Insurance Co.* is an unpublished decision, because it was decided after January 1, 2007, it properly may be cited as authority to this Court. *See* Ninth Circuit Rule 36-3 and F.R.A.P. 32.1.

(citing *Weeks v. Oswald*, No. 1:12-cv-000082-CWD, 2012 WL 3012640, at *3 (D. Idaho July 23, 2012) (citing *Podolan v. Idaho Legal Aid Services, Inc.*, 854 P.2d 280, 288 (Idaho Ct. App. 1993)).

Under those authorities, Millennium cannot prevail by isolating select testimony and insisting Garcia Diaz was on a purely personal errand. The question is whether the evidence permits a reasonable inference that his conduct was "actuated, at least in part, by a purpose to serve the master," *Teurlings*, 156 Idaho at 74, 320 P.3d at 1233, or whether he intended to act for the employer's purpose "in any way, even partially." *Harper*, 2022 WL 425058, at *3. The record easily clears that threshold.

Thus, in **Volume I (Ex. A)** of his deposition, Garcia Diaz testified ***See Exhibit A***:

**Vol. I, 25, ln. 5–13**

"Q. And the morning of the accident, were you headed to work?
A. I was going to pick up some dirt because a lady had complained that there was dirt in the front of her house.
Q. So you were going to go pick up dirt from the fiber-optic burial you had done, I assume, the day before?
A. Yes."

He also testified:

**Vol. I, 26, ln. 7–12**

"Q. Can you tell me a little bit of what you remember before the impact?
A. I don't remember -- I don't remember much time before the accident happened. I just know that I was on my way to pick up some tools, some tools that I needed."

In **Volume II (Ex. B),** Garcia Diaz again testified, ***See Exhibit B:***

**Vol. II, 76, ln 8–11**

"Q. Why were you driving so early in the morning?
A.  I was on my way to pick up some tools.
Q. And where were those tools located?
A. In Idaho Falls."

And when asked what tools he was attempting to pick up:

**Vol. II, 76, ln. 17–25, ln. 1-5**

"Q. What tools exactly where you attempting to pick up early in the morning?
A. A compactor to compact the dirt."

The foregoing testimony is direct evidence of a work purpose. At minimum, it creates a

genuine factual dispute under *Teurlings* and *Harper*.

**B. Garcia Diaz Repeatedly Testified that he Left for a Work Purpose and Knew What he Needed to do for his Work**

Millennium's motion also ignores Garcia Diaz's repeated testimony that, even if no one

expressly directed him that morning, he knew what he needed to do for his work.

In Volume II of his deposition, he testified:

**Vol. II, 109, ln. 7–10**

"Q. Did Jaime tell you to go to Idaho Falls to pick up a compactor on the morning of the accident?
A. Nobody told me to go. I knew what I needed to -- what I needed to do for my work."

He further testified:

**Vol. II, 108, ln. 21–22**

"A. Well, I came to pick up a compactor in Idaho Falls."

**Vol. II, 109, ln. 4–5**

"A. I left the house with that purpose."

And later:

**Vol. II, 129, ln. 14–24**

"Q. Do you remember what caused you to wake up so early on a Saturday morning to go get a compactor?
A. I would imagine that I needed it, but I don't remember.
Q. And your intent was just to bring it back home to the Airbnb?
A. I think so, or to have it in the truck available for work.
Q. But you're not sure?
A. I don't remember. I would imagine that I needed it. If I went to pick it up, it's because I needed it."

Under *Harper*, even partial intent to serve the employer is enough. This testimony does not eliminate scope of employment issues. It confirms them.

## C. The Ram Truck was a Work Truck, Used Only for Work, and Provided for Work

Millennium's theory also fails because the vehicle itself was tied directly to the job. Garcia Diaz testified unequivocally that he did not use the Ram truck for personal purposes.

**Vol. II, 76, ln. 2–4**

"Q. Did you ever drive the Ram truck for anything other than a work purpose?
A. No."

He elaborated:

**Vol. II, 100, ln. 11–20**

"Q. And you testified earlier today that you never drove that Ram truck for any other reason other than work; correct?
A. Yes, sir.
Q. And that's because Jaime, your boss, had told you that you could not use the Ram truck for any other reason than work; isn't that correct?
A. Nobody told me. I knew that.
Q. How did you know that?
A. Because it was provided to me for work."

Volume I is fully consistent:

**Vol. I, 22, ln. 2–10**

"Q. Let's talk a little bit about the work truck. Who gave you or let you use the work truck, the Dodge Ram; or was that yours?
A. That truck was given to me by Mr. Jaime and Sergio -- or -- no -- Ivan and Sergio.
Q. Okay. So let me just clear the record. The Dodge Ram truck was given to you to use, during the fiber-optic burial, by Ivan and Sergio?
A. Yes, ma'am [sic]."

**Vol. I, 23, ln. 10–14**

"Q. Why did they lend you this truck or let you use this truck?
A. Because we needed to move the trailers and -- well, the truck was the biggest one, and so I used it to move the trailers."

**Vol. I, 22, ln. 17–20**

"A. We worked from 6:00 in the morning until almost 9:00 at night, and then I would go home to the Airbnb with the truck. We worked about fourteen hours every day."

**Vol. II, 102, ln. 16–18**

"Q. Did you ever take the Ram truck to your Airbnb where you were staying?
A. Yes, sir."

Garcia Diaz's testimony is powerful evidence that the trip in question involved a work truck, used only for work, in the context of employer-provided lodging and long workdays.

**D.    Saturday Work and Saturday Corrective Work Were Part of the Project**

Millennium cannot use the fact that May 18, 2024, fell on a Saturday to erase the work-related purpose. Garcia Diaz testified that he sometimes worked on Saturdays and that Saturday tasks could involve clean up and neighborhood complaints:

**Vol. II, 103, ln. 15–20**

"Q. In May of 2024, did you ever work on weekends, Saturdays or Sundays?
A. Sometimes Saturday mornings.
Q. How many Saturday mornings did you work in May of 2024?
A. I don't remember. I don't remember. There weren't many. I think it was just one."

He later testified:

**Vol. II, 112, ln. 12–25; 113, ln. 1–3**

"Q. Sir, I need you answer the question as to whether or not you have any specific recollection as you sit here today of having any plans or intention to work on the day of the accident.
A. I don't remember. I only know that I worked on some Saturdays. I don't remember if that Saturday I was going to work or not.
Q. I think you testified earlier today that you may have worked on one Saturday; is that correct?
A. Yes, but in the community in Rexburg, you don't work a lot on those days, so it's just to pick up anything that was left from before, but on that Saturday, I just worked for one hour to pick up any cones that were left in a bad spot and because some of the neighbors complained."

Even if Millennium emphasizes his lack of certainty about every detail of that Saturday morning, this testimony still creates a jury issue, not a summary judgment record.

**E. The Homeowner Complaint and Sprinkler Testimony tie the Trip to Project-Related Repair and Clean up**

Millennium's motion also fails because Garcia Diaz repeatedly tied his intended activity to homeowner complaints arising from the project.

In Volume I, he testified:

**Vol. I, 35, ln. 18–25; 36, ln. 1–3**

"A. So on the days that we would go work, before we started the day, before we started working, we would ring the doorbell of the people that we were going to be working close to.
And we would come and we would tell them that if they had any complaints -- I would give them my phone number, and I would tell them to call me. And that's what happened that day.
That person called me and said that they had dirt in their yard, and they complained. And it needed to be removed."

In Volume II, he testified:

**Vol. II, 133, ln. 21–25; 134, ln. 1–2**

"Q. Did you ever talk to any of the homeowners in Rexburg?
A. Oh, yes, I did speak to some of them, because I needed to ask for permission to work in their yards."

And:

**Vol. II, 134, ln. 3–22**

"Q. In the last deposition you told me that that Friday before the accident, you had received a text from a homeowner and that you were going there on Saturday to fix the homeowner's yard -- is that true?
A. Yes, I think it was a sprinkler that got broken, that we broke.
Q. And is that why you were going to pick up the compactor?
A. I don't know. I don't know if that was the reason why I was going there, but, yes, I do remember that I was told that there was a complaint about a sprinkler that had been broken a day before, two days before. I don't remember."

He also testified:

**Vol. II, 145, ln. 7–25**

"Q. I think you testified earlier that there had been a broken sprinkler a day or two before the accident on the project; is that correct?
A. Yes, sir.
Q. Who informed you of the broken sprinkler?
A. The Romanians.
Q. The broken sprinkler, was that in a homeowner's yard?
A. Yes, sir.
Q. Did you ever communicate with that homeowner?
A. I didn't get to communicate regarding that broken sprinkler, but it is very common to have broken sprinklers in this type of work. During the first week, we broke one sprinkler and I myself went to repair it. I knocked on the door and I asked them to turn on the sprinkler so that I could see which one was the one that was not working. I repaired it and everything was fine. It's normal for sprinklers to be broken."

The above testimony alone is enough to defeat Millennium's attempt to portray the morning trip as divorced from project duties.

**F. Under Federal Rule of Evidence 602, GarciaDiaz's Intermittent Memory Affects the Weight the Jury Will Place on his Testimony, not its Admissibility**

Millennium cites a Ninth Circuit decision regarding Rule 602's personal knowledge requirement stating that "Rule 602 requires any witness to have sufficient memory of the events such that she is not forced to fill in the gaps in her memory with hearsay or speculation," *United States v. Whitemore*, 776 F.3d 1074, 1082 (9th 2015), and witnesses are not "permitted to speculate, guess, or voice suspicions." *Id*. Plaintiffs do not dispute that rule. But that is not this case.

The Ninth Circuit has held that where a witness's memory is sketchy, sporadic, or intermittent, the issue is one of weight rather than admissibility:

> Typically, issues of inconsistency and memory problems evident in otherwise admissible testimony inform the factfinder's assessment of the witness's reliability and weight of testimony. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014); *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."). The district court did not

abuse its discretion in considering the deposition and trial testimonies of Luque's mother.

*Luque v. Blinken*, No. 21-16012, 2022 WL 17592190, at *1 (9th Cir. Dec. 13, 2022);[2] *see also Batchelor v. Cupp*, 693 F.2d 859, 865 (9th Cir. 1982) (where witness had, among things, significant memory issues, "[t]he trial court acted well within the scope of its discretion by admitting Bozman's testimony and allowing the jury to determine the weight properly to be given that testimony.")

That is exactly what the record shows here. Garcia Diaz repeatedly testified that his memory after the collision was impaired, but not nonexistent.

**Vol. II, 77, ln. 23-25**

"A. I don't remember anything regarding the accident.  I just remember when I woke up at the hospital."

**Vol. I, 26, ln. 9–12**

"A. I don't remember -- I don't remember much time before the accident happened. I just know that I was on my way to pick up some tools, some tools that I needed."

**Vol. II, 116, ln. 16–23**

"A. Yes, all of those forms I have in my discovery, and just like I told you, it's the same thing that I'm telling you for the questions you're asking me. For here, it's clear that I -- I had said that I was picking up those tools for work and that the firefighters came to rescue me. That is the truth, so it's clear that it is true. My memory after the accident was not in good shape. I can't remember many things."

Garcia Diaz's memory of the events leading up to the collision is intermittent and sketchy, not nonexistent. Thus, Garcia Diaz's testimony about what he remembers – in particular, traveling to Idaho Falls to pick up a dirt compactor to work on a Millennium residential customer's property concerning the Rexburg project – should be admissible under Rule 602's foundational

---

[2] See footnote 1 *supra*.

requirements. Any incompleteness in his recollection goes to weight and credibility, not admissibility.

**G. Millennium's own Selected Evidence Includes Garcia Diaz's Signed Statement that he was on his way to Pick up Tools for Work, and he Confirmed that was True**

Perhaps most damaging to Millennium's position is Garcia Diaz's acknowledgment during Volume II of his deposition concerning his signed Idaho State Police driver statement:

**Vol. II, 115, ln 20–25; 116, ln. 1–3**

"Q. Sir, I've highlighted a section here towards the bottom of the first page, which is marked Signet 02508. Can you read in Spanish the portion of the document that I've highlighted?
A. 'I was on my way to pick up tools for my work when the crash happened. I just remember when the firefighters helped me.'"

He then confirmed:

**Vol. II, 116, ln. 9–23**

"Q. Do you recall assisting the police officer in completing this form?
A. Yes, all of those forms I have in my discovery, and just like I told you, it's the same thing that I'm telling you for the questions you're asking me. For here, it's clear that I -- I had said that I was picking up those tools for work and that the firefighters came to rescue me. That is the truth, so it's clear that it is true. My memory after the accident was not in good shape. I can't remember many things."

Millennium cannot use GarciaDiaz's later memory limitations as a sword while ignoring that the same later deposition includes his reaffirmation that he had said he was picking up tools for work and further that "[t]hat is the truth."

**H. The Full Volume I and Volume II Record of Garcia Diaz's Deposition Testimony Creates Multiple Genuine Issues of Material Fact, Which Millennium's Motion Only Underscores**

The record, taken as a whole, contains numerous admissions supporting Plaintiffs' position and defeating Millennium's effort to use supplemental excerpts to eliminate disputes:

**Vol. I, 25, ln. 5–13** — Garcia Diaz testified he was going "to pick up some dirt because a lady had complained" and confirmed it was dirt from the fiber-optic burial done the day before.

**Vol. I, 26, ln. 7–12** — he testified he was "on my way to pick up some tools, some tools that I needed."

**Vol. I, 22, ln. 2–10** — he testified the Dodge Ram truck was given to him to use during the fiber-optic burial.

**Vol. I, 23, ln. 10–14** — he testified the truck was used because "we needed to move the trailers."

**Vol. I, 35:18–25; 36:1–3** — he testified that if homeowners had complaints, he gave them his phone number, "and that's what happened that day," when a homeowner called about dirt in the yard that needed to be removed.

**Vol. II, 76, ln. 2–4** — he testified he never drove the Ram truck for anything other than a work purpose.

**Vol. II, 76, ln. 8–11** — he testified he was driving early that morning because he was "on my way to pick up some tools" in Idaho Falls.

**Vol. II, 77, ln. 5-6** — he testified the specific item was "A compactor to compact the dirt."

**Vol. II, 100, ln. 19–20** — he testified he knew the Ram truck was only for work because "it was provided to me for work."

**Vol. II, 103, ln. 15–20** — he testified he sometimes worked on Saturday mornings.

**Vol. II, 107, ln. 21–22** — he testified, "Well, I came to pick up a compactor in Idaho Falls."

**Vol. II, 108, ln. 21-22** — he testified, "I left the house with that purpose" and "Nobody told me to go. I knew what I needed to -- what I needed to do for my work."

**Vol. II, 112, ln. 19–25; 113, ln. 1–3** — he testified Saturday work could include pickup of leftover project items and neighbor complaints.

**Vol. II, 115, ln. 20–25; 116, ln. 1–3** — he read his driver statement: "I was on my way to pick up tools for my work when the crash happened."

**Vol. II, 116, ln. 16–23** — he confirmed that statement was true and explained his memory after the accident "was not in good shape."

**Vol. II, 133, ln. 21–25; 134, ln. 1–2** — he testified he spoke to homeowners because he needed permission to work in their yards.

**Vol. II, 134, ln. 3–22** — he remembered a complaint about a broken sprinkler a day or two before the accident.

**Vol. II, 145, ln. 16–25** — he testified that broken sprinklers were common on this type of work and that he himself had repaired one on the project.

**Vol. II, 149, ln. 13–25; 150, ln. 6–25** — he testified regarding the use of a compactor, depending on dirt conditions and indicated that such equipment may be needed for the work being performed.

These admissions, taken together, plainly create competing inferences about work purpose, scope of employment, and the significance of Garcia Diaz's memory limitations. Millennium's motion for leave to supplement does not simplify the record. It confirms that these issues belong to the fact finder.

### III.  CONCLUSION

Millennium's proposed supplemental evidence does not eliminate factual disputes—it confirms them. Under *Teurlings* and *Harper*, Garcia Diaz's testimony supports a reasonable inference that he was acting, at least in part, for work purposes when he left the Airbnb in the Ram truck to pick up tools or a compactor related to the Rexburg fiber project. Under Ninth Circuit case law, any intermittent or incomplete memory goes to weight and credibility—not admissibility. At minimum, the *Volume I and Volume II* of Garcia Diaz's deposition record creates genuine issues of material fact as to work purpose, scope of employment, and witness credibility.

Millennium's motion for leave to supplement should therefore be denied, and its underlying motion for summary judgment must likewise be denied.

Respectfully submitted,

DATED: April 7, 2026.

**SERNA & ASSOCIATES PLLC**

*/s/ Enrique G. Serna*
Enrique G. Serna
Lead Counsel
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, I caused the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MILLENIUM NETWORKS, LLC.'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (DKT.77)** to be served on the following parties via email:

Bruce R. McAllister, ISB No. 2531
Cody L. Morgan, ISB No. 10331
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
P. O. Box 7426
Boise, ID  83707-7426
Telephone: (208) 344-5800
Facsimile: (208) 344-5510
iCourt/ e-File: service@ajhlaw.com
                bmcallister@ajhlaw.com
                cmorgan@ajhlaw.com

*Attorneys for Defendant Signet Construction, LLC*

James S. Thomson, II
Aaron G. Eskue
POWERS FARLEY, PC
702 West Idaho Street
Suite 700
Boise, Idaho 83702

*Attorneys For Defendant Millennium Networks, LLC, d/b/a Silver Star Communications*

Mr. Bren E. Mollerup
Benoit, Mollerup, Danielson & Grieve, PLLC
126 2nd Avenue North
P.O. Box 366
Twin Falls, Idaho, 83303

*Attorneys For Defendant Western Mountain, Inc.*

Brady Hall
Owner and Trial Attorney
Brady Hall Law, PLLC
950 West Bannock Street
Suite 1100
Boise, Idaho 83702
brady@bhlawidaho.com
(208) 559-6656

*Attorney for Gold Communication Expert, Inc.*

/s/ Enrique G Serna
Enrique G. Serna