Enrique G. Serna ISB No. 12114
Serna & Associates PLLC
950 W. Bannock St., Suite 1100
Boise, Idaho 83702
Tel: (210) 865-5800
Email: enrique@serna-associates.com
Lead Counsel

## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| PEDRO MANUEL ALCANTAR, Deceased, and survived by his wife, DULCE MARIA GONZALEZ, MARTA MEJIA VELASQUEZ, RICARDO ALCANTAR SANDOVAL; LUIS ENRIQUE SERENO, Deceased, and survived by his wife, SANDRA RUBIO MARTINEZ, individually and on behalf of her minor son LS, and daughter, MS; JOSE GUADALUPE SANCHEZ, Deceased, and survived by MARIA MEDINA, LUCIANO SANCHEZ, LUCIANO SANCHEZ MEDINA; JAVIER GOMER ALCANTAR, Deceased, and survived by his wife, CAROLINA REBOLLO, and on behalf of her minor son, EG, and daughter, SG; BRANDON PONCE, Deceased, and survived by FANNY ANDREA PONCE, CHRISTIAN PONCE, ARTURO PONCE; ABEL MEJIA, Deceased, and survived by his wife, JASMINE MOLINA, individually and on behalf of her minor daughter, HM, daughter, KM; RICARDO ALCANTAR MEJIA; JOSE ALCANTAR MEJIA; <br> Plaintiffs, <br> v. <br> LUIS GARCIA DIAZ, Individually, ADRIAN SIRBU, individually; TOWER COMMUNICATIONS SOLUTIONS, LLC; J&A DRILLING AND CONSTRUCTION, LLC, MILLENIUM NETWORKS, LLC d/b/a SILVER STAR COMMUNICATIONS, WESTERN MOUNTAIN, INC., GOLD COMMUNICATIONS EXPERT INC., and SIGNET CONSTRUCTION, LLC, <br> Defendants. | CASE NO.4:24-cv-00479 <br><br> **PLAINTIFFS' MEMORANDUM IN RESPONSE AND OPPOSITION TO DEFENDANT WESTERN MOUNTAIN, INC.'S MOTION TO JOIN IN DEFENDANT MILLENNIUM NETWORKS, LLC'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY [DKT. 138]** |

## I.  INTRODUCTION

This is the second time Western Mountain, Inc. ("Western Mountain") has sought to join a co-defendant's briefing rather than develop its own legal position. The pattern is the same: Western Mountain—having already independently briefed the identical legal issues in its own Motion for Summary Judgment (Dkt. 81)—now moves to join Millennium Networks, LLC's ("Millennium") Response to Plaintiffs' Notice of Supplemental Authority, offering no independent analysis, no new argument, and no new authority. The Motion (Dkt. 138) should be denied as procedurally improper.

To the extent this Court reaches the merits, it should reject Western Mountain's and Millennium's characterization of *Hartman v. Pocatello Hospital, LLC*, No. 52101 (Idaho June 1, 2026). Far from being the non-event that Defendants suggest, *Hartman*—together with the United States Supreme Court's unanimous decision in *Montgomery v. Caribe Transport II, LLC*, 608 U.S. ___ (May 14, 2026)—decisively confirms that all four pending Motions for Summary Judgment must be denied. These two controlling decisions, both issued after the close of substantive briefing, answer the very questions Defendants insist have been resolved in their favor.

Six families—mourning six men who died on an Idaho road (and 2 other injured) doing the work that Defendants hired, authorized, and failed to supervise—are entitled to have their claims resolved by a jury. The law is on their side. So are the facts. And so is this Court's own prior record in this case.

## II.  THE MOTION TO JOIN SHOULD BE DENIED AS PROCEDURALLY IMPROPER

Western Mountain's Motion to Join (Dkt. 138) invokes Federal Rule of Civil Procedure 20. That rule governs the joinder of parties to a lawsuit—not the adoption of co-defendant briefing in motion practice. No Federal Rule authorizes a party to join another party's responsive brief to a

Notice of Supplemental Authority, particularly where the moving party has already had a full and fair opportunity to independently brief the underlying legal issues and chose not to file its own response to the Notice. Western Mountain filed its own Motion for Summary Judgment (Dkt. 81) and independent memorandum raising the same proximate causation and foreseeability arguments it now seeks to recycle through Millennium's brief. Plaintiffs filed their Notice of Supplemental Authority on June 1, 2026 (Dkt. 135), and their Errata on June 3, 2026 (Dkt. 137). Western Mountain had the opportunity to respond to both filings independently. It did not. It cannot now secure additional briefing capacity by adopting a co-defendant's arguments under the guise of a procedurally misplaced joinder motion.

Plaintiffs raised the same objection when Western Mountain previously sought to join Millennium's and Gold's arguments on course and scope of employment (Dkt. 130), and Plaintiffs' opposition (Dkt. 132) to that motion remains equally applicable here. Allowing serial joinder motions in this case would undermine orderly case management, reward a party for failing to timely file its own responsive brief, and effectively expand briefing beyond what the Local Rules authorize. The Motion to Join should be denied.

## III.  MILLENNIUM'S ARGUMENTS—NOW ADOPTED BY WESTERN MOUNTAIN— FAIL ON THE MERITS

### A.  Millennium's Concession That Hartman "Merely Reaffirms Existing Law" Is a Double-Edged Sword That Destroys Its Own Summary Judgment Motion

Millennium's central argument is that "*Hartman* does not change existing Idaho law on the negligence element of proximate causation." (Dkt. 136, at 2.) Millennium is correct. *Hartman* reaffirmed and applied the proximate causation standard articulated in *Sharp v. W.H. Moore, Inc.,* 118 Idaho 297, 301, 796 P.2d 506, 510 (1990), and *Orthman v. Idaho Power Co.* (*Orthman II*),

130 Idaho 597, 601, 944 P.2d 1360, 1364 (1997). But this concession destroys Millennium's position, not Plaintiffs.

If the proximate causation standard articulated in *Hartman* was always the law—as Millennium now concedes—then Millennium's Motion for Summary Judgment was always deficient under that same standard. Millennium cannot simultaneously argue (a) that *Hartman* merely reaffirms existing law and (b) that summary judgment is still appropriate under that same law. The sword cuts both ways. The existing legal standard, which *Hartman* reaffirmed, required denial of Defendants' MSJs when they were filed. It still does now.

### B.   Millennium's "Generality Problem" Argument Is Itself the Specific-Mechanism Analysis That Hartman Forbids

Millennium argues that Plaintiffs have a "generality problem" and attempts to frame the correct inquiry as whether "Silver Star, as the owner of the Project, by contracting with a general contractor to build a fiber optic system in Rexburg, Idaho, created a general risk of vehicular-related harm in Idaho Falls, Idaho." (Dkt. 136, at 4.) This framing, which Western Mountain now adopts wholesale, is precisely what *Hartman* condemns.

The Idaho Supreme Court was explicit: foreseeability in the proximate cause context concerns a "general risk of harm," not a "specific mechanism of injury." *Hartman*, slip op. at 20 (citing *Sharp*, 118 Idaho at 301, 796 P.2d at 510; *Orthman II*, 130 Idaho at 601, 944 P.2d at 1364). In *Orthman II*, the district court granted summary judgment because the defendant could not have foreseen the plaintiff's specific act of reconnection. The Idaho Supreme Court reversed, holding that the district court imposed an "unduly narrow evidentiary burden" by focusing on the specific mechanism rather than the general risk posed by the defendant's own conduct. *Hartman*, slip op. at 20–21. The Idaho Supreme Court reversed summary judgment on causation in *Hartman* for the exact same reason. *Id*. at 21–22.

Millennium's geographic narrowing—distinguishing the "Rexburg project" from the "Idaho Falls" accident location—is precisely the kind of mechanism-specific inquiry *Hartman* prohibits. The correct question is not whether Defendants could have predicted the exact location of the collision. The correct question under *Hartman* is whether deploying unqualified, unvetted, improperly supervised workers who operated motor vehicles on Idaho public roads created a general risk of vehicular harm to the public. Not only is that answer obviously yes—it is confirmed by Millennium's own concession that "employees of contractors and subcontractors" were "operating motor vehicles on public highways as part of the Project." (Dkt. 136, at 4.) Millennium described the general risk of harm. Its own words establish foreseeability.

### C.  Proximate Causation Is a Jury Question Under Controlling Idaho Law

Even if Millennium's framing were not self-defeating—and it is—the most it would establish is a factual dispute for the jury. *Hartman* reiterated without qualification: "[p]roximate cause is typically a question entrusted to the jury when the facts and circumstances of the particular case are such that reasonable minds could differ." *Hartman*, slip op. at 19 (quoting *Cramer v. Slater*, 146 Idaho 868, 875, 204 P.3d 508, 515 (2009)). No Defendant has established—or even argued— that reasonable minds could not differ on whether deploying untrained, unlicensed, uninsured workers to operate vehicles on Idaho roads would foreseeably result in vehicular fatalities. Summary judgment on proximate causation is therefore improper as a matter of law.

## IV. THE U.S. SUPREME COURT'S UNANIMOUS DECISION IN *MONTGOMERY v. CARIBE TRANSPORT II* REINFORCES THE NEGLIGENT-HIRING DUTY ALREADY RECOGNIZED UNDER IDAHO LAW

Since the close of briefing on all pending Motions for Summary Judgment, the United States Supreme Court issued its unanimous decision in *Montgomery v. Caribe Transport II, LLC*, 608 U.S. ___ (May 14, 2026). Although *Montgomery* arose in the context of federal preemption

under the Federal Aviation Administration Authorization Act (FAAAA) — a statute that does not apply to this diversity action — the Court's reasoning directly reinforces the negligent-hiring duty that Idaho courts have long recognized and that Plaintiffs have already fully briefed before this Court. In *Montgomery*, Justice Barrett, writing for a unanimous Court, grounded the entire analysis in a foundational principle of state common law: "[n]egligent-hiring claims impose a duty of reasonable care in employing a contractor for work carrying a risk of physical harm." *Montgomery*, slip op. at 5 (*citing Restatement (Second) of Torts § 411 (1964)*). The Court held that this duty — rooted in *Restatement § 411* — is a recognized and legitimate exercise of a state's authority to regulate safety, and that states may impose it on intermediaries who coordinate work involving vehicle operation. Justice Kavanaugh, joined by Justice Alito, concurred to explain why: "The negligent-hiring tort against [intermediaries], like the negligence tort against [direct actors], exists to keep unsafe trucks and unsafe drivers off America's highways," and intermediaries who "can be held liable for disregarding poor safety records, have a strong incentive to do business only with safe and reliable motor carriers." *Id.*, Kavanaugh, J., concurring, at 2,5-6.

This Court is governed by Idaho substantive law under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and Idaho has recognized the identical duty for over eighty years. *Joslin v. Idaho Times Publishing Co.*, 60 Idaho 235, 91 P.2d 386 (1939) (employer liable for failure to exercise due care in selecting a competent contractor). Plaintiffs briefed this theory in full in (Dkt. 90-1), citing *Joslin*, *L.B. Foster Co. v. Hurnblad*, 418 F.2d 727 (9th Cir. 1969), and controlling Idaho authority adopting *Restatement § 411*. The Supreme Court's unanimous reaffirmation of the *Restatement § 411* duty in *Montgomery* — with no dissent — confirms that the legal principle Plaintiffs have advanced throughout this litigation reflects the settled common law of the United

States. Defendants offer no authority to the contrary. The negligent-hiring duty exists. Whether Millennium, Western Mountain, and Gold breached it by deploying unvetted, unlicensed, and unsupervised workers onto Idaho public roads is a question of fact for the jury.

## V.    THIS COURT'S OWN PRIOR ORDERS COMPEL DENIAL OF ALL PENDING MOTIONS FOR SUMMARY JUDGMENT

Before any defendant filed a dispositive motion, this Court made independent findings that bind the analysis now. Three of Judge Nye's prior orders directly foreclose summary judgment.

First, in (Dkt. 52) (July 18, 2025), this Court granted Plaintiffs leave to file the Third Amended Complaint adding Gold Communications, expressly finding that amendment was not futile because "Plaintiffs recently learned Gold Communications was purportedly responsible for hiring Sirbu, J&A Drilling, and Garcia-Diaz to complete the City of Rexburg's fiber optic cable project, during which Garcia-Diaz caused the car accident at issue in this suit," and that it "would not be futile" to bring "negligence and intentional and negligent infliction of emotional distress claims against Gold Communications." (Dkt. 52), at 4. These are the same claims Defendants now ask the Court to dismiss on summary judgment. A claim this Court found viable and non-futile in July 2025 does not fail as a matter of law in June 2026 absent an undisputed material change in the facts—and there is none.

Second, in (Dkt. 68) (September 19, 2025), this Court made independent factual findings that "a cause of action exists against Gold Communications" based on the same liability chain: Western Mountain hired Gold, Gold hired Garcia-Diaz, and Garcia-Diaz caused the fatal collision. (Dkt. 68), at 5. This Court has already accepted the causal theory Defendants now ask it to reject.

Third, in (Dkt. 73) (November 7, 2025), this Court entered default judgment against Adrian Sirbu, Tower Communications Solutions, LLC, and J&A Drilling and Construction, LLC—the direct

tortfeasors. Their liability is established. Granting summary judgment for the upstream contractors who created the conditions for that harm would produce an internally inconsistent result: the downstream actors who committed the direct tortious act are held liable in default, while the contractors above them who hired, deployed, and failed to supervise them escape entirely. That is not what Idaho tort law requires. It is not what the Restatement requires. And it is not what the record in this case supports.

## VI.    THE PRIOR BRIEFING RECORD ESTABLISHES MULTIPLE UNREBUTTED GROUNDS FOR DENIAL OF SUMMARY JUDGMENT

Plaintiffs have already briefed in exhaustive detail, in Dkts (83, 90, 120), why the record independently precludes summary judgment on multiple overlapping grounds. Plaintiffs incorporate those filings in full and highlight the essential points.

### A.  Multiple Independent Restatement Exceptions Establish Duty

Idaho has fully adopted the Restatement (Second) of Torts framework governing contractor liability. See *Ek v. Herrington*, 939 F.2d 839, 843 (9th Cir. 1991) (citing *Peone v. Regulus Stud Mills, Inc.,* 113 Idaho 374, 744 P.2d 102 (1987)). Under *Restatement § 411*, Millennium and Western Mountain owed a duty of reasonable care in selecting competent contractors—a duty *Joslin* established in 1939 and *Montgomery* has now reaffirmed at the Supreme Court level. Under *Restatement § 414*, Western Mountain's retention and exercise of control over the Project— including completing work abandoned by Gold—imposed direct liability for the manner in which the work was performed. Under *Restatement §§ 413, 416, and 427*, non-delegable duties arising from work involving a foreseeable, peculiar risk of physical harm cannot be discharged by pointing downstream to a subcontractor who defaulted and fled Idaho. The Idaho Supreme Court confirmed: "[c]ourts have not hesitated to adopt *§§ 413 and 416* with regard to a duty owed to injured members of the general public." *Peone*, 113 Idaho at 376, 744 P.2d at 104. Whether any

of these exceptions applies is a question of fact for the jury unless the answer is clear as a matter of law—and it is not clear here. *Ek*, 939 F.2d at 843.

### B. Dr. Eggington's Expert Report Remains Unrebutted and Uncontradicted

Plaintiffs' expert Dr. William Eggington established, through an unrebutted report, the operational and safety failures permeating this Project at every level. No Defendant has designated a competing expert to rebut Dr. Eggington. No Defendant has controverted Dr. Eggington's findings. On summary judgment, this Court's role is "not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," and the Court "must view the facts in the non-moving party's favor." *Mills v. Union Pac. R.R. Co.,* No. 1:22-CV-00143-DCN, 2024 WL 185246, at *3 (D. Idaho Jan. 16, 2024). An unrebutted expert opinion on safety failures is, standing alone, sufficient to create a genuine issue of material fact.

### C. Scope of Employment Is a Classic Jury Question Under Idaho Law

Garcia-Diaz was driving his employer's work truck (Ram), using employer-provided tools (Compactor and warehouse items), performing post-installation work (Fixing Homeowners Yards on a Saturday) for Project customers (Millenium's) under direction from multiple project entities including Western Mountain and Gold. The Idaho Supreme Court has held that "[i]f the automobile causing the accident belongs to the defendant, and is being operated at the time of the accident by one in the general employ of the defendant, there is a reasonable presumption that at such time he was acting within the scope of his employment." *Nava v. Rivas-Del Toro*, 151 Idaho 853, 860, 264 P.3d 960, 967 (2011). Idaho appellate courts and this Court have repeatedly held that scope of employment is a factual question reserved for the jury. *Teurlings v. Larson*, 156 Idaho 65, 74, 320 P.3d 1224, 1233 (2014); *Torres v. Sugar-Salem Sch. Dist. #322*, No. 4:17-CV-00178-DCN, 2019 WL 4784598, at *8 (D. Idaho Sept. 30, 2019). Summary judgment on this issue is improper.

### D.   Joint and Several Liability Under Idaho Code § 6-803(5)

Millennium, Western Mountain, Gold, and their associated entities were collectively pursuing a common plan: delivering fiber optic service to the City of Rexburg's residents. The reckless tortious act that killed and injured Plaintiffs occurred in direct furtherance of that plan. Under *Idaho Code § 6-803(5),* parties who act in concert or through agency relationships in furtherance of a common plan resulting in a reckless tortious act are jointly and severally liable. Driving while intoxicated constitutes reckless conduct. See *Carrillo v. Boise Tire Co.,* 152 Idaho 741, 751, 274 P.3d 1256, 1266 (2012). Whether Defendants were acting in concert or through agency relationships is a fact question for the jury. *Knutsen v. Cloud*, 142 Idaho 148, 151, 124 P.3d 1024, 1027 (2005).

### E.   The Duty Runs to Every Member of the Class of Motorists Exposed to Risk

The Idaho Supreme Court is clear: where negligent supervision "foreseeably created a potential for harm to those motorists whom [the tortfeasor] would encounter on the state's highways," the duty is owed "not merely to identified individuals but to a class" of foreseeable victims. *Sterling v. Bloom*, 111 Idaho 211, 225, 723 P.2d 755, 769 (1986). Every motorist on the roads where Defendants deployed unvetted, uninsured, unsupervised workers was in that class. Six of them died and two more were injured. The duty existed. It was breached. Whether the breach proximately caused those deaths is a question for the jury.

## VII.   GRANTING SUMMARY JUDGMENT WOULD INVITE DANGEROUS CONSEQUENCES FOR IDAHO LAW

This Court should understand what ruling for any Defendant on these facts would mean for every business operating in Idaho.

Millennium contracted with Western Mountain for a large public infrastructure project. Western Mountain contracted with Gold. Gold deployed Garcia-Diaz. No one verified his license. No one

verified his sobriety. No safety program was implemented. No written agreements established safety standards between contractors. Gold abandoned the Project and fled Idaho. Garcia-Diaz—drunk—drove head-on into a van carrying six men to their deaths and injuring others.

If Millennium, Western Mountain, and Gold can obtain summary judgment on these facts, the rule becomes: Idaho businesses may contract out dangerous work to unvetted subcontractors; those subcontractors may hire unlicensed, unqualified individuals to operate vehicles on public roads; and as long as the direct tortfeasor can be identified as "independent," every tier above is insulated from any legal consequence. The entire Restatement framework—adopted by Idaho courts for decades, confirmed by the Ninth Circuit, and reaffirmed by the unanimous Supreme Court in Montgomery—exists precisely to prevent this outcome.

A ruling for Defendants would invite every Idaho business to structure its operations in the most informal, undocumented, and unsupervised manner possible; deploy whoever it can find to operate vehicles on public roads; and point to the nearest defaulting subcontractor when tragedy strikes. It would license the assembly of informal, unaccountable labor chains with no written safety standards, no vetting of workers, no verification of licensure or insurance—and no legal responsibility when those chains produce death. That is not the law of Idaho. That is not the law of the United States. And it should not become the law of this case.

## VIII.  CONCLUSION

Western Mountain's Motion to Join (Dkt. 138) should be denied as procedurally improper. Western Mountain had a full and fair opportunity to respond independently to Plaintiffs' Notice of Supplemental Authority and Errata. It did not. Federal Rule of Civil Procedure 20 does not authorize the adoption of co-defendant motion practice briefing, and this Court should not permit serial joinder motions as a vehicle for additional argument beyond the Local Rules.

To the extent the Court reaches the merits, the Motion and the arguments it adopts should be rejected in full. Millennium's own concession that *Hartman* "merely reaffirms existing law" confirms the existing standard always required denial of summary judgment. Millennium's geographic-narrowing argument is a specific-mechanism inquiry expressly forbidden by *Hartman* and *Orthman II*. The Idaho Supreme Court reversed summary judgment on proximate causation in *Hartman*, and *Erie* requires this Court to apply that controlling standard. The United States Supreme Court's unanimous decision in *Montgomery v. Caribe Transport II* reaffirms that state negligent-hiring claims under *Restatement § 411* — imposing a duty of reasonable care in employing contractors for work carrying a risk of physical harm — reflect settled common law that Defendants have never refuted.

This Court's own prior orders in Dkts. 52, 68, and 73 have already accepted the liability theory Defendants now ask this Court to reject.

The evidentiary record, anchored by Dr. Eggington's unrebutted expert report and a documentary trail of contractual obligations and safety failures, is replete with genuine disputes of material fact on duty, retained control, negligent hiring, non-delegable duties, scope of employment, proximate causation, joint and several liability, and intentional infliction of emotional distress. Each of these issues is a classic jury question under Idaho law.

Six families are waiting for their day before a jury. The law compels that they receive it.

For all of the foregoing reasons, Plaintiffs respectfully request that this Court:

1.  DENY Defendant Western Mountain, Inc.'s Motion to Join (Dkt. 138);

2.  DENY Defendant Millennium Networks, LLC's Motion for Summary Judgment (Dkt. 77);

3.  DENY Defendant Western Mountain, Inc.'s Motion for Summary Judgment (Dkt. 81);

4.  DENY Defendant Signet Construction, LLC's Motion for Summary Judgment (Dkt. 110); and

5.  DENY Defendant Gold Communications Expert, Inc.'s Motion for Summary Judgment (Dkt. 111).

DATED: June 8, 2026.

**SERNA & ASSOCIATES PLLC**
*/s/ Enrique G. Serna*
Enrique G. Serna
Lead Counsel

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2026, I caused the foregoing **- PLAINTIFFS' MEMORANDUM IN RESPONSE AND OPPOSITION TO DEFENDANT WESTERN MOUNTAIN, INC.'S MOTION TO JOIN IN DEFENDANT MILLENNIUM NETWORKS, LLC'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY [DKT. 138]**

To be served on the following parties via email.

Bruce R. McAllister, ISB No. 2531
Cody L. Morgan, ISB No. 10331
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
P. O. Box 7426
Boise, ID  83707-7426
Telephone: (208) 344-5800
Facsimile: (208) 344-5510
iCourt/ e-File: service@ajhlaw.com
                bmcallister@ajhlaw.com
                cmorgan@ajhlaw.com

*Attorneys for Defendant Signet Construction, LLC*


James S. Thomson, II
Aaron G. Eskue
POWERS FARLEY, PC
702 West Idaho Street
Suite 700
Boise, Idaho 83702

*Attorneys For Defendant Millennium Networks, LLC, d/b/a Silver Star Communications*

Mr. Bren E. Mollerup
Benoit, Mollerup, Danielson & Grieve, PLLC
126 2nd Avenue North
P.O. Box 366
Twin Falls, Idaho, 83303

*Attorneys For Defendant Western Mountain, Inc.*

Brady Hall
Owner and Trial Attorney
Brady Hall Law, PLLC

950 West Bannock Street
Suite 1100
Boise, Idaho 83702
brady@bhlawidaho.com
(208) 559-6656

*Attorney for Gold Communication Expert, Inc.*

/s/ Enrique G Serna
Enrique G. Serna